[Civ. No. 4285.   First Appellate District, Division Two.—September 20, 1922.]

## GLEN E. KIRKPATRICK et al., Respondents, v. B. J. PYE, Appellant.

[1] SALES—UNCONDITIONAL ACCEPTANCE OF OFFER—SUBSEQUENT LETTER FROM MANUFACTURER TO VENDOR—CONTRACT UNAFFECTED BY.—The fact that a contract between a vendor and purchaser of a quantity of lug boxes to be used in packing fruit was written upon a letter-head which had printed at the top thereof in small type, "Quotations are for prompt acceptance and acceptance by mill," did not make a subsequent letter from the manufacturer to the vendor imposing the terms of manufacture a part of such contract, where the contract was not in the form of a quotation and acceptance but was an unconditionally accepted order for the boxes.

[2] ID.—PLACE OF DELIVERY—INTERPRETATION OF CONTRACT.—Where a Sacramento brokerage company contracted in writing to purchase from a box company a large number of lug boxes at a stipulated price per hundred, price fixed on the Sacramento freight rate, entire order to be completed within forty days, and the boxes were to be used in packing fruit and had been resold by the brokerage company, a reasonable construction of the contract was that the entire order was to be delivered at Sacramento or at such place as should be designated by the buyer.

[3] ID.—PAYMENT FOR BOXES IN TRANSIT—CONSTRUCTION OF CONTRACT. Under a provision in such a contract reciting that "the purchaser agrees in case that any of the above conditions cause him to make cancellation of any part of order, to accept and pay for all boxes made to this order that may be in transit or being loaded at mill," the purchaser was not bound to pay for certain carloads of boxes which were in transit, where it appeared from the contract that the provision had reference only to the provision immediately preceding wherein it was provided that delivery was conditioned only upon ability to secure cars and subject to labor troubles or strikes.

[4] ID.—PERSONAL PROPERTY NOT IN EXISTENCE—PLACE OF DELIVERY—EXCEPTION.—Section 1754 of the Civil Code, providing that where personal property is sold which is not in existence it is deliverable at the place where it is produced, has no application if the parties have contracted with reference to the place of delivery.

[5] ID.—PLACE OF DELIVERY—AMBIGUITY—EVIDENCE.—Where a written contract for the sale of personal property is not entirely free from ambiguity upon the question of delivery, it is permissible to apply section 1649 of the Civil Code and inquire as to the understanding of the parties.

APPEAL from a judgment of the Superior Court of Alameda County. Dudley Kinsell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Edwin M. Otis and McKannay & Hunt for Appellant.

Ford & Johnson for Respondents.

LANGDON, P. J.—This is an action for money had and received. The plaintiffs did business under the name of Sacramento Brokerage Company and the defendant under the name of California-Oregon Lumber and Box Company, and hereinafter they will be thus referred to, respectively. On August 19, 1919, the Sacramento Brokerage Company contracted, in writing, to purchase from the California-Oregon Lumber and Box Company 220,000 Los Angeles lug boxes at $12 a hundred, price fixed on the Sacramento freight rate. Several days after the making of the aforesaid contract the California-Oregon Lumber and Box Company showed to plaintiff's agent a letter, wherein it was set forth that unless a deposit of $2,000 was made by defendant with the Pacific Wirebound Box Company, which company was to manufacture boxes for the defendant, the boxes would not be made. Thereupon the Sacramento Brokerage Company, through its agent, advanced the $2,000 so demanded and having accepted and paid in full for all boxes received by it made demand for the return of the $2,000 theretofore advanced. Defendant refused to repay the $2,000 deposit, contending that plaintiff had failed to accept six carloads of boxes which were a part of the 220,000 box order.

Plaintiff admits that it refused to accept six carloads of boxes and justifies its action in so doing on the ground that the boxes were not delivered to plaintiff within the time prescribed in the written contract.

The sole question to be determined is as to whether or not plaintiff breached its contract by failing to accept the six carloads of boxes, as it is, of course, clear that if it accepted and paid for all the boxes required by the contract, the Sacramento Brokerage Company is entitled to a return

of its $2,000 accommodation advance, which is the subject of this action.

To determine whether or not this contract was breached by plaintiff requires an examination of the contract and the interpretation placed thereon by the parties before the alleged breach. It is the contention of the appellant that the entire contract between the parties consists of the written contract of August 19, 1919, and the letter from the Pacific Wirebound Box Company to the defendant, written a week later. We must first determine, then, whether this letter from a third party is a part of the contract and binding upon the plaintiff; and, second, we are required to ascertain from the contract where delivery of the boxes was to be made.

The contract of August 19, 1919, is set forth in the record as follows:

"California-Oregon Lumber & Box Company.
"Forest Products.
"112 Market St., San Francisco.
"Telephone Sutter 1028.
"Aug. 19, 1919.

"Sacramento Brokerage
"Sacramento,
"California.

"Quotations are for prompt acceptance and acceptance by mill. Subject to previous sale. Unless otherwise stated, all agreements on our part are contingent upon acts or other causes beyond our control. Taxes national and state on freight· bills or shipments to be paid by purchaser.

"This is to acknowledge receipt of order for 220,000 Los Angeles Lug Boxes. These boxes to have veneer sides and bottoms and California White Pine ends and cleats.

"TERMS & DELIVERY. Price delivered on a Sacramento freight rate to be $12.00 per 100 without tops. Net cash with sight draft against bill of lading. Entire order to be completed within the next forty days.

"CONDITIONS. Upon our ability to secure cars for transportation of same, and subject to any labor troubles or acts commonly known as strikes and so forth, over which we have no control.

"THE PURCHASER. Agrees in case that any of the above conditions causing him to make cancellation of any part of

order, to accept and pay for all boxes made to this order
that may be in transient or being loaded at mill.

"CALIFORNIA OREGON LUMBER & BOX CO.

"B. J. PYE.

"SACRAMENTO BROKERAGE CO.

"E. L. ZEIGLER.

"These lugs are to be standard dimensions; and in event
heads and cleats are to be loaded into one car; the same
number of sides and bottoms are to be loaded into the other
car, so as to arrive about the same time, as these lugs go to
various loading stations."

The letter from the Pacific Wirebound Box Company to
the defendant is as follows:

"Pacific Wirebound Box Co.,

"San Francisco, Calif.

"August 26, 1919.

"Dear Sir:

"With reference to our several conversations on the sub-
ject of supplying 300,000 LOS ANGELES LUG BOX SIDES AND
BOTTOMS as per our letter of August 18th, file WW–3514,
desire to advise that Mr. T. A. Burns called on the phone
this morning with reference to the conversations you and I
had had in connection with the mode of accepting the order
and making shipments thereon.

"Desire to advise that we agreed that we would accept
the order, subject to conditions mentioned in our letter
of August 18th, and to be shipped conditioned upon our
ability to secure cars, and other conditions mentioned in the
concluding paragraph of our letter; terms, however, to be
changed to the following:

"Net cash with draft B/L attached, instead of 10 days
from invoice datings, as mentioned in our former letter;
and that an advance payment of $2,000 is to be made on
this acceptance of order, to cover any liabilities that might
arise, with reference to materials being cut and such as
might be on hand, not being shipped 40 days from date, for
causes stated. (Check for $2,000 is hereby acknowledged.)

"Mr. Burns advises that as rapidly as cars are loaded
and on advice of contents, check would be given us covering
the total value of the shipment; it being understood that no
cancellation of order would occur, unless the stock could

not be put in transit within the 40 days mentioned, and
for the reasons stated.

·  "With this understanding we are willing to proceed with
the shipment of the 10 cars, totaling 300,000 sides and bot-
toms, green rotary cut spruce material.

"Yours truly,
"PACIFIC WIREBOUND BOX CO.,
"G. X. WENDLING, President.

"MR. B. J. PYE, Mgr.
    "California-Oregon Lumber & Box Co.,
        "112 Market St., City."

[1] The trial court held that the above-quoted letter of
the Pacific Wirebound Box Company to the defendant was
no part of the contract between the parties hereto and re-
fused to admit it in evidence, and this ruling is contended
by the appellant to be reversible error. We think there is
no merit in this contention. Appellant's position is that
because the contract between him and the Sacramento
Brokerage Company was written upon a letter-head which
had printed at the top thereof in small type, "Quotations
are for prompt acceptance and acceptance by mill," that
the Sacramento Brokerage Company became bound by any
conditions which appeared in the letter of Pacific Wire-
bound Box Company, the manufacturer.

We think this argument is without force. In the first
place, the contract between the parties hereto was not in
the form of a quotation and acceptance. It is, as appears
upon the face, the acknowledgment of an order for boxes,
accepted by the California-Oregon Lumber and Box Com-
pany. The acceptance of this order is unconditional, except
for the matters mentioned in the paragraph entitled "Con-
ditions," none of which enter into the present case.

Appellant seeks to charge the Sacramento Brokerage Com-
pany with the conditions imposed upon appellant by its
vendor, because one of those conditions was that no can-
cellation of order should be made by purchaser unless the
boxes were not put *in transit* within forty days. If this
condition could be imposed upon the Sacramento Brokerage
Company, it would have been under obligation to accept the
six cars of boxes in dispute, because they were actually in
transit at the expiration of the forty days. But we think
it perfectly clear that the Sacramento Brokerage Company

was in no way bound by the conditions of a contract between the California-Oregon Lumber and Box Company and Pacific Wirebound Box Company, made after the contract· between Sacramento Brokerage Company and California-Oregon Lumber and Box Company had been executed. The letter of the Pacific Wirebound Box Company was dated a week later than the contract between the parties; it was for 300,000 Los Angeles lug box sides and bottoms, while plaintiff's order was for but 220,000 of these boxes. There is no evidence that Sacramento Brokerage Company knew from where its vendor was to purchase the boxes, or what conditions would enter into that purchase. Suppose that after the defendant had made its contract with plaintiff and had gone into the open market to purchase the goods, it had found that it was compelled to pay twice as much for the boxes as it was to receive for them from the plaintiff. Could it be contended that the plaintiff was bound to meet this condition imposed upon his vendor? Assuredly not; and there is no more reason why it should be bound by one condition imposed upon its vendor than by another.

Appellant seeks comfort from the fact that the Sacramento Brokerage Company advanced the $2,000 demanded by the Pacific Wirebound Box Company. We fail to see the significance of this fact. The Sacramento Brokerage Company was under no legal obligation to do this. It may have considered it expedient at that time to advance the money, regardless of its legal obligation to do so, but this could not enlarge its liabilities or the appellant's rights.

We know of no legal principle which would warrant the introduction of this correspondence between defendant and its vendor, as against this plaintiff. The plaintiff placed an order with the defendant for certain boxes, which was accepted by. defendant. Where defendant chose to secure the goods contracted to be sold, or upon what terms was a matter of unconcern to plaintiff. The refusal of the trial court to admit this communication in evidence was, therefore, proper.

[2] A more difficult question confronts us in interpreting the contract upon the question of delivery. The construction given to the contract by the trial court was that the entire order was to be delivered to Sacramento or to such other place as plaintiff should direct within forty days

from date of contract.   We think this is a fair interpretation
of the language of the contract.   It would seem also to be
the reasonable construction of the contract, and the one
acted upon by the parties in their dealings thereunder.
The boxes were to be used in packing fruit and had been
resold by the Sacramento Brokerage Company.   For such
a use, a delay of a day or two even might be of vital im-
portance.   When the plaintiff entered into its contract with
the defendant it did not know, so far as the record discloses,
where the defendant would secure the boxes.   It is unreason-
able to suppose that plaintiff would have contracted to ac-
cept delivery of the boxes at a place the location of which
was unknown to plaintiff at the time of making the contract.
Plaintiff contracted to have the boxes delivered during the
fruit season.   To take the extreme illustration advanced by
respondent, if appellant's contention be correct, it might
have ordered the boxes from a mill in China and plaintiff
would have received delivery when the goods were loaded
on the boats, though they arrived weeks after the fruit sea-
son, and at a time when they would have been valueless
to plaintiff.   The plaintiff had contracted to resell these
boxes and had been directing shipments directly to its
customers.   This course of dealing was known to the de-
fendant, and it seems reasonable to suppose that the parties
contracted with reference thereto.   We think that the con-
struction placed upon the contract by the trial court was
proper under all the circumstances appearing in the record.

[3]   Another contention of appellant is that the follow-
ing provision of the contract applies to the present situa-
tion: ''The purchaser agrees in case that any of the above
conditions causing him to make cancellation of any part of
order, to accept and pay for all boxes made to this order
that may be in transit or being loaded at mill.''   It is con-
tended that because of this provision, the plaintiff was
bound to pay for the six carloads which were in transit even
though they had not been delivered in time to conform to
the provisions of the contract.   A glance at the contract
between the parties, heretofore set out, is convincing of the
fact that the paragraph relied upon by appellant has ref-
erence only to the paragraph immediately preceding it,
wherein it is provided that the delivery is conditioned
upon ability to secure cars for transportation and subject

to any labor troubles or acts commonly known as strikes and so forth. It is obvious from a reading of the contract that it was intended in the event the defendant was excused from further performance because of strikes or lack of transportation facilities, the plaintiff should, nevertheless, be compelled to pay for all boxes then in transit or being loaded at the mill. Further than this, California-Oregon Lumber and Box Company was not protected. The order was not canceled because of failure of transportation facilities or of labor. It was canceled by plaintiff because of failure to deliver in the time provided by the contract and no excuse is given in the record for the failure to deliver in time. The boxes were purchased for resale to fruit growers. Plaintiff had resold them and was forced to purchase elsewhere to fill its orders. Defendant was fully aware of all the surrounding circumstances and telegrams between the parties advised defendant of the urgent need for the boxes.

[4] Appellant contends for the application of section 1754 of the Civil Code, providing that where personal property is sold which is not in existence, it is deliverable at the place where it is produced. The application of this section would cause a reversal of the judgment, because, as stated, it was admitted that the goods had been loaded at the mills within the time limited in the contract. This matter is, of course, involved in our discussion of the interpretation which the trial court placed upon the contract with reference to its provisions for delivery. Section 1754 of the Civil Code, obviously, has no application if the parties have contracted with reference to the place of delivery.

[5] In deference to the appellant's position upon this matter, it must be admitted that the contract is not entirely free from ambiguity upon the question of delivery, and for this reason it was permissible for the trial court to apply section 1649 of the Civil Code and inquire as to the understanding of the parties. We have already discussed the matters appearing in the record tending to support the view of the trial court, and one of the most convincing of such matters is the testimony of the appellant, himself, as follows: ''Q. Suppose that no diverting order had ever been made by Mr. Zeigler's company [the respondents] under the terms of this contract where would the cars have been

delivered? A. They would have gone to Sacramento. They would still have been sold under the Sacramento freight rate.''

To recapitulate, then, we think that in the light of the surrounding circumstances appearing in the record and the interpretation given to the contract by the parties themselves in their dealings thereunder, the trial court correctly interpreted the contract between the parties as calling for delivery at Sacramento or at such place as should be designated by Sacramento Brokerage Company. As thus interpreted, defendant was in default in the delivery of the last six cars and plaintiff was within its rights in refusing to accept same.

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 16, 1922.

All the Justices concurred.