[Civ. No. 41198. First Dist., Div. Two. July 8, 1980.]

LOLA ANNA FOSGATE, Plaintiff and Appellant, v.
RODERICK GONZALES, Defendant and Respondent.

[Civ. No. 42664. First Dist., Div. Two. July 8, 1980.]

LOLA ANNA FOSGATE, Plaintiff and Appellant, v.
MARTIN ANDREW RISCH et al., Defendants and Respondents.

COUNSEL

Ellwood Hoskins for Plaintiff and Appellant.

Moore, Clifford, Wolfe, Larson & Trutner, Cyril Viadro, Berry & Berry, Phillip S. Berry and Elaine M. McMahan for Defendants and Respondents.

OPINION

**TAYLOR, P. J.**—These appeals arise as the result of a complaint for damages for personal injuries sustained by plaintiff, Lola Anna Fosgate, aka Smith,[1] who, after consuming intoxicating beverages at Pat's Cock-

---

[1]Although the record indicates that Fosgate appeared by her duly appointed guardian ad litem, Renee E. Smith, we shall refer to her by name.

tail Lounge, owned and operated by Gonzales, was struck by a truck owned by defendant Davis[2] and operated by defendant Risch. In No. 42664, Fosgate's appeal from the order granting a summary judgment on her first cause of action against Risch and Davis, the major question is whether there were any triable issues of fact; in No. 41198, Fosgate's appeal from the judgment on the pleadings and dismissal of her second cause of action against Gonzales, the major contention concerns the retroactive application of the 1978 amendments to Business and Professions Code section 25602 and Civil Code section 1714. For the reasons set forth below, we have concluded that the order and judgment must be reversed.

We turn first to the summary judgment (No. 42664). Fosgate's first cause of action alleged that about 12:30 a.m. on January 1, 1974, she was a pedestrian crossing Meekland Avenue in a westerly direction when she was struck by a 1958 Chevrolet owned by Davis, and driven by Risch in a southerly direction. Fosgate also alleged that for several hours immediately before 12:30 a.m., she had been a paying patron of Pat's Cocktail Lounge and negligently had been served alcoholic beverages when she was an obviously intoxicated person. Fosgate alleged that her injuries were caused as a direct and proximate result of the negligence of Risch, Davis and Gonzales.

"'Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts.'" (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953], quoting from *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

---

[2]Although the record indicates that Davis' personal representative and estate were duly substituted, we shall refer to her by name.

"'In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the *admissible evidence* set forth in the papers and all inferences reasonably deducible from such evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from such evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact.' (Italics added.) (Code Civ. Proc., § 437c.)

"'The remedy is designed to terminate an action promptly where the purported cause of action or defense is sham or otherwise wholly unfounded. But it is futile to seek the order where any basis for a cause of action or defense can be shown. In other words, the moving party should not confuse an opponent's *weak* case with *no case at all.* The [appellate] court, construing the moving party's affidavits strictly . . . and the counteraffidavits liberally . . ., will reverse the summary judgment if any kind of case is shown.' (4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 199, p. 2844.)" (*Bowden* v. *Robinson* (1977) 67 Cal.App.3d 705, p. 719 [136 Cal.Rptr. 871]).

Applying the above rules to the pertinent parts of the instant affidavits, the following appears: Risch and Davis, in support of the motion, averred that Risch was driving within the stipulated speed limit of 25 miles per hour. Although it was raining, the windshield wipers were working and his headlights were on. Risch had nothing to drink all day. When Risch first saw Fosgate, she was running. He first saw her when she was about 25 feet away and immediately applied his brakes. She continued to run until she was struck. Risch left 12 feet of skidmarks. After the accident, Fosgate had a strong odor of alcohol about her person.

The counteraffidavits indicated the following: The deposition of Risch's passenger, his wife, a nurse, stated that: 1) it was not raining; 2) she saw Fosgate's reflection in the windshield for the first time after Risch had applied the brakes; and 3) immediately after the accident, she was not able to detect any odor of alcohol on Fosgate.

Fosgate's expert indicated that: 1) under the circumstances, it is not possible to leave skidmarks on wet pavement; 2) if the headlights had been on and functioning properly and Risch were attentive, he should have been able to see Fosgate with a low beam at a minimum distance of 100 feet before impact; 3) assuming Risch's estimate of a speed of 25

miles per hour, the skidmarks left would have been 28 feet and he would have been able to stop within 57 1/2 feet after he first saw Fosgate.

Gonzales immediately after the accident observed skidmarks of 35-40 feet. To Fosgate's expert, this observation meant that Risch was traveling somewhere between 28.6 and 32.7 miles per hour. Risch admitted that headlights from passing fire trucks lit up the area and the roadway was "real nice and clear."

Fosgate could not remember anything about the three- to four-hour period preceding the accident. Gonzales indicated that she arrived about 9:30 p.m. and had about five of her "standard drinks" of vodka and tonic or vodka and 7-up. She never ran but always walked and was very careful. Fosgate's estranged husband stated that she may have been drinking earlier in the day and was unsteady on her feet; when drunk, she wobbled.

Thus, it is readily apparent that there were several triable issues of fact as to: 1) Fosgate's state of intoxication; 2) whether she was running or walking; 3) the care and attentiveness with which Risch was driving; 4) the weather; and 5) Risch's speed.

Risch and Davis argue on appeal that the summary judgment was properly granted as Fosgate's intoxicated condition barred her cause of action as a matter of law. While the trial court's ruling was proper when made (*Kindt* v. *Kauffman* (1976) 57 Cal.App.3d 845 [129 Cal. Rptr. 603]), this court (Div. Four) recently pointed out in *Sissle* v. *Stefenoni* (1979) 88 Cal.App.3d 633, at page 636 [152 Cal.Rptr. 56], that in *Ewing* v. *Cloverleaf Bowl* (1978) 20 Cal.3d 389, 404, footnote 10 [143 Cal.Rptr. 13, 572 P.2d 1155], our Supreme Court (in part disapproving *Kindt* v. *Kauffman, supra*) held that a patron as a matter of law does not *necessarily* commit willful misconduct in consuming liquor to the point of becoming intoxicated. Whether such conduct constitutes willful misconduct is a question of fact for the jury (*Paula* v. *Gagnon* (1978) 81 Cal.App.3d 680, 685 [146 Cal.Rptr. 702]).

Since the summary judgment must be reversed for the reasons set forth above, we need not discuss in detail other grounds for the invalidity of the summary judgment. We note, however, that the summary judgment could not be based on the res judicata judgment on the plead-

ings in favor of Gonzales[3] as that judgment (discussed below) was the subject of an appeal and, therefore, not final (Code Civ. Proc., § 1049; *Levy* v. *Cohen* (1977) 19 Cal.3d 165, 171 [137 Cal.Rptr. 162, 561 P.2d 252]). As Fosgate correctly points out, the matter is to be tried under the comparative negligence doctrine (*Li* v. *Yellow Cab. Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]; *Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162]).

We turn next to the judgment on the pleadings (No. 41198) granted after the court overruled Gonzales' demurrer.

"Since judgment on the pleadings is similar to a judgment following the sustaining of a demurrer, the standard of appellate review is the same. 'Like the demurrer, the motion for judgment on the pleadings is confined to the *face of the pleading under attack.* [Citations.] This means two things: [¶] *First,* if the pleading, though uncertain or otherwise defective in form, sufficiently states a cause of action or defense, the motion cannot be granted on the basis of a showing of extrinsic matters by inference from attached exhibits, by affidavits, or otherwise. [Citations.] [¶] *Second,* a sufficient complaint cannot be thus attacked by reference to matters set forth in the answer. [Citations.] [¶] But the unqualified statement of the foregoing rule may be misleading.... [as] various outside matters may be looked to under the doctrine of judicial notice....' (4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, § 162, pp. 2817-2818.) (Italics in original.)

"The motion for judgment on the pleadings performs the function of a general demurrer. Therefore, it '"admits all material and issuable facts pleaded."' (*Colberg, Inc.* v. *State of California* ex rel. *Dept. Pub. Wks.* (1967) 67 Cal.2d 408, 412....) '[T]he facts alleged in the pleading attacked must be accepted as true, and the court may also consider matters subject to judicial notice.' (*Kachig* v. *Boothe* (1971) 22 Cal. App.3d 626, 630....) With these principles in mind, we approach the complaint." (*Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670, 675-676 [138 Cal.Rptr. 338].)

As indicated above, Fosgate's complaint alleged that for several hours immediately prior to January 1, 1974, she was a patron of Pat's Cocktail Lounge and was sold alcoholic beverages when she was an obviously

---

[3]Fosgate has requested that we take judicial notice of the record in No. 41198, which is the subject of a separate appeal.

intoxicated person. The record indicates that the judgment on the pleadings was granted on grounds that Fosgate's state of intoxication constituted willful misconduct and thus barred her cause of action as a matter of law. As we have indicated above, this is no longer a tenable ground, as *Ewing, supra,* 20 Cal.3d 389, specifically disapproved of the cases on which Gonzales relied below.

■ On appeal, however, Gonzales argues that the judgment on the pleadings can and should be sustained by a retroactive application of the 1978 amendments to Business and Professions Code section 25602 and Civil Code section 1714.

To understand these amendments, a brief review of the the prior case law is helpful. Prior to 1978, under the doctrine of *Cole* v. *Rush* (1955) 45 Cal.2d 345 [289 P.2d 450, 54 A.L.R.2d 1137], the courts of this state held that as a matter of law bartenders were not liable for injuries caused by their sale of liquor to intoxicated customers. It was held that the consumption of alcoholic beverages and not their provision was the proximate cause of any injury to intoxicated customers or to third parties who were injured by intoxicated customers.

Our Supreme Court exploded this obsolete fiction in *Vesely* v. *Sager* (1971) 5 Cal.3d 153, at page 164 [95 Cal.Rptr. 623, 486 P.2d 151]: "Under the . . . principles of proximate cause, it is clear that the furnishing of an alcoholic beverage to an intoxicated person may be a proximate cause of injuries. . . ." In *Vesely,* the court held that if a defendant had violated Business and Professions Code section 25602, which classifies as a misdemeanor the sale of alcoholic beverages to "any obviously intoxicated person," plaintiff, under Evidence Code section 669, could rely on section 25602 as the source of defendant's duty of care (p. 165). In *Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313 [128 Cal.Rptr. 215, 546 P.2d 719], however, the court held that *Vesely*'s repudiation of *Cole, supra,* 45 Cal.2d 345, stripped bartenders of their exemption from *both* statutory and common law liability, and specifically stated at page 325: "Although we chose to impose liability on the *Vesely* defendant on the basis of his violating the applicable statute, the clear import of our decision was that there was no bar to civil liability under modern negligence law."

In *Ewing* v. *Cloverleaf Bowl, supra,* 20 Cal.3d 389, the court held, at page 400, that *Vesely* and *Bernhard,* both *supra,* govern, regardless of

whether a third party or a customer himself sues a bartender. In *Coulter* v. *Superior Court* (1978) 21 Cal.3d 144 [145 Cal.Rptr. 534, 577 P.2d 669], the court extended the liability to noncommercial providers of alcoholic beverages, and at page 152, reiterated the common law as well as the statutory basis for its prior holdings.

The 1978 amendments here in issue were a speedy legislative response to *Coulter* (*Taylor* v. *Superior Court* (1979) 24 Cal.3d 890, 897 [157 Cal.Rptr. 693, 598 P.2d 854]), and are set forth below.[4]

The 1978 amendments became effective on January 1, 1979. As this court (Div. Four) has stated, the 1978 enactment operates prospectively (*Sissle* v. *Stefenoni, supra,* 88 Cal.App.3d 633, fn. 1, at p. 635). The Second District agrees that an existing cause of action would not be nullified by the 1978 amendments (*Cable* v. *Sahara Tahoe Corp.*

---

[4]Business and Professions Code section 25602: "(a) Every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any habitual or common drunkard or to any obviously intoxicated person is guilty of a misdemeanor.

"(b) *No person* who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage pursuant to subdivision (a) of this section *shall be civilly liable to any injured person or the estate of such person for injuries inflicted on that person as a result of intoxication by the consumer of such alcoholic beverage.*

"(c) The Legislature hereby declares that *this section shall be interpreted so that the holdings* in cases such as Vesely v. Sager (5 Cal.3d 153), Bernhard v. Harrah's Club (16 Cal.3d 313) and Coulter v. Superior Court [21 Cal.3d 144]˙ *be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages rather than the serving of alcoholic beverages as the proximate cause of injuries inflicted upon another by an intoxicated person*" (italics added). (Amended by Stats. 1978, ch. 929, § 1, which: (1) designated the former § to be subd. (a); and (2) added subds. (b) and (c)).

Civil Code section 1714: "(a) Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. The extent of liability in such cases is defined by the Title on Compensatory Relief.

"(b) It is the intent of the Legislature to abrogate the holdings in cases such as Vesely v. Sager (5 Cal.3d 153), Bernhard v. Harrah's Club (16 Cal.3d 313), and Coulter v. Superior Court [21 Cal.3d 144] and to reinstate the prior judicial interpretation of this section as it relates to proximate cause for injuries incurred as a result of furnishing alcoholic beverages to an intoxicated person, namely that the furnishing of alcoholic beverages is not the proximate cause of injuries resulting from intoxication, but rather the consumption of alcoholic beverages is the proximate cause of injuries inflicted upon another by an intoxicated person.

"(c) No social host who furnishes alcoholic beverages to any person shall be held legally accountable for damages suffered by such person, or for injury to the person or property of, or death of, any third person, resulting from the consumption of such beverages." (Amended by Stats. 1978, ch. 929, § 2, which: (1) designated the former § to be subd. (a); and (2) added subds. (b) and (c)).

(1979) 93 Cal.App.3d 384, 398 [155 Cal.Rptr. 770]). This interpretation is in accord with the general presumption that legislative enactments are construed prospectively, unless a clear intention to the contrary exists (*Hopkins* v. *Anderson* (1933) 218 Cal. 62 [21 P.2d 560]).

Relying on *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371], Gonzales argues that such a clear intention to the contrary was expressed as the Legislature stated its intent to abrogate the rule of *Vesely* and its progeny and to return to the prior law.

The Legislature, however, did not express an intent that the 1978 amendments be given retroactive application. Given the extensive discussion of the amendments, as revealed by the legislative history, we think the absence of an urgency clause is significant (cf. *Children's Hosp. of Los Angeles* v. *Superior Court* (1977) 74 Cal.App.3d 445, 452 [141 Cal.Rptr. 515]).

██ Another argument not raised by the parties[5] supports our view that the 1978 amendments should be construed prospectively.

We recognize that it can be argued that Fosgate's cause of action was statutory since in *Vesely, supra*, 5 Cal.3d 153, the duty imposed on the licensee to refrain from service of alcohol was established by Business and Professions Code section 25602, and the repeal of a statutory remedy without a savings clause will terminate all pending actions based on that statute (*Southern Service Co., Ltd.* v. *Los Angeles* (1940) 15 Cal.2d 1, 11-12 [97 P.2d 963]).

However, in *Coulter, supra*, 21 Cal.3d, at pages 152-153, and *Bernhard, supra*, 16 Cal.3d, at page 325, our Supreme Court repeatedly indicated that the cause of action for negligent service of alcohol is grounded in the common law rather than being solely a statutory remedy (see *Coulter*, 21 Cal.3d at pp. 150-151, and *Vesely, supra*, 5 Cal.3d, at pp. 164-165). Here, of course, Fosgate's cause of action was pending when our Supreme Court in *Ewing, supra*, 20 Cal.3d 389, held that *Vesely* and *Bernhard* also applied to injured intoxicated plaintiffs. Thus, the applicable rule is that the 1978 amendments did not divest

---

[5]This argument is based on the Comment in (1979) 10 Pacific L. J. 592.

██

Fosgate of her accrued common law cause of action (cf. *Root* v. *Root* (N.D.Cal. 1940) 31 F.Supp. 562, 565).

The abolition of civil causes of action by the 1978 amendments will not bar pending actions but only those causes of action that have not accrued (see *Callet* v. *Alioto* (1930) 210 Cal. 65, 67-68 [210 P. 438]). ■ A cause of action "accrues" when a suit may be maintained thereon (see *Dillon* v. *Board of Pension Commrs.* (1941) 18 Cal.2d 427 [116 P.2d 37, 136 A.L.R. 800]; *Los Angeles Co.* v. *Metropolitan C. Ins. Co.* (1933) 135 Cal.App. 26, 28 [26 P.2d 699, 27 P.2d 914]). ■ Thus, we conclude that since here, the facts giving rise to a cause of action for negligent service of alcohol occurred prior to January 1, 1979, the 1978 amendments should not be construed retroactively to bar Fosgate's cause of action against Gonzales.

It follows that the judgment on the pleadings in favor of Gonzales also must be reversed.

The order granting the summary judgment (No. 42664) and the judgment on the pleadings (No. 41198) are reversed.

Rouse, J., and Miller, J., concurred.

The petition of respondent Gonzales for a hearing by the Supreme Court was denied September 24, 1980.