[Civ. No. 56437. Second Dist., Div. Two. Nov. 21, 1979.]

AUDREY K. ROBINSON, a Minor, etc., et al.,
Plaintiffs and Respondents, v.
PEDIATRIC AFFILIATES MEDICAL GROUP, INC., et al.,
Defendants and Appellants.

908

COUNSEL

Kirtland & Packard and Steven R. Van Sicklen for Defendants and Appellants.

John E. Sweeney for Plaintiffs and Respondents.

OPINION

BEACH, J.—Defendant physician Siegel appeals from a judgment entered in favor of plaintiffs in a malpractice action against him following a court trial.[1]

On September 8, 1975, two-year old Audrey Robinson was suffering from gastroenteritis and moderate dehydration necessitating her admission to West Hills Hospital in Canoga Park for the administration of fluids intravenously (hereafter referred to as IV). The IV was adminis-

---

[1]Prior to trial, a settlement was reached with defendant West Hills Hospital.

tered through a vein on the back of Audrey's right hand. To keep the IV in place, Dr. Bernard Siegel, Audrey's pediatrician, taped Audrey's right hand to a five-pound sandbag. The IV was administered during the first 56 hours of Audrey's hospitalization. The trial court found that the taping of Audrey's right hand was done in such a manner as to impair circulation of the fingers and to cause the amputation of portions of Audrey's third, fourth, and fifth fingers. Audrey was awarded $27,500 in damages and her father, Ralph Robinson, was awarded $7,227.08 in medical expenses incurred on behalf of Audrey.

Defendant contends on appeal that (1) the evidence was insufficient to support the trial court's finding of negligence and (2) Civil Code section 3333.1 barred recovery of medical expenses against defendant.

DISCUSSION:

1. *Sufficiency of the Evidence*

In resolving the issue of the sufficiency of the evidence supporting the trial court's findings, our power begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, to support the finding of fact. (*Stevens* v. *Parke, Davis & Co.,* 9 Cal.3d 51, 64 [107 Cal.Rptr. 45, 507 P.2d 653]; *Nestle* v. *City of Santa Monica,* 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480].) Defendant, on the other hand, in order to sustain his contention of insufficiency of the evidence must demonstrate that there is *no* substantial evidence to support the challenged findings. (*Stevens* v. *Parke, Davis & Co., supra,* 9 Cal.3d at p. 64.) Thus, our review requires us to focus on evidence which is favorable to plaintiffs, "rather than to weigh favorable evidence against unfavorable." (*Ibid.*)

Defendant contends he is entitled to a reversal because "there has been no expert testimony presented that [his] conduct was below the appropriate standards." We disagree.

In a malpractice action, the expert testimony which establishes a plaintiff's prima facie case may come from the defendant. (*Lashley* v. *Koerber,* 26 Cal.2d 83, 89 [156 P.2d 441]; *Keen* v. *Prisinzano,* 23 Cal.App.3d 275, 279 [100 Cal.Rptr. 82].) Here, defendant himself testified that the taping of a hand done in such a manner as to impair circulation to the fingers would fall below the standard of care

in the medical community. There was additional expert testimony. Dr. Edward Henjyoji, a specialist in plastic and reconstructive surgery who, at Dr. Siegel's request, saw Audrey on the sixth day of her hospitalization, testified that the fingers on Audrey's right hand had "a mottled color," indicative of vascular compromise or poor circulation. It was his opinion that the use of tape tight enough to impair circulation to the fingers was below the standard of care in the medical community, as was the taping of the fingers in such a manner as to make it impossible to determine their color as a means of checking the circulation, which was the case here. Upon removal of the tape there was noticeably pronounced flattening of the child's fingers.

The foregoing is sufficient evidence to support the trial court's finding. The finding is that defendant's taping of Audrey's hand during the IV administration "in such fashion as to cover the fingers so that they cannot be seen and so tightly as to impair circulation in the fingers" fell below the standard of care expected from a pediatric specialist administering an intravenous solution and constituted negligence.

### 2. *Applicability of Civil Code Section 3333.1*

Defendant claims that because Audrey's medical expenses in the amount of $7,227.08 had at the time of trial already been paid by the insurance company, plaintiff Ralph Robinson, Audrey's father, should have been barred from recovering these expenses from defendant. In support of his argument, defendant cites Civil Code section 3333.1, which abolished the "collateral source" rule and allows the introduction into evidence of compensation received from sources independent of the tortfeasor, thus reducing the damages to the plaintiff. This provision became effective on December 12, 1975. The cause of action involved here arose in September 1975.

At the time plaintiffs' cause of action accrued, Audrey's medical expenses, even though paid by the insurance company, would have been recoverable against defendant. As the California Supreme Court stated in *Hrnjak v. Graymar, Inc.*, 4 Cal.3d 725, 729 [94 Cal.Rptr. 623, 484 P.2d 599, 47 A.L.R.3d 224]: "California remains a firm proponent of the 'collateral source rule.' [Fn. omitted.] This doctrine provides that if an injured party received some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which plaintiff would otherwise collect

from the tortfeasor." The question before us is whether the subsequent enactment of section 3333.1 would bar such recovery in this case. As we noted earlier, this section may result in the reduction of damages to a defendant and hence diminish his liability.

■ Absent some clear policy requiring the contrary, statutes modifying liability in civil cases are not to be construed retroactively. (*White v. Lyons,* 42 Cal. 279, 284-285 [statute modifying rate of interest not to be applied retroactively because to do so would impair rights accrued under prior statute]; *Campbell* v. *New York Evening Post* (1927) 245 N.Y. 320 [157 N.E. 153, 154, 52 A.L.R. 1432] [statute authorizing, in libel suits, the introduction into evidence of damages recovered by plaintiff from other sources in mitigation of damages, thereby lessening amount recoverable by plaintiff, not to be applied retroactively because of diminished liability of defendant].) ■ In the case at bench, therefore, we hold that section 3333.1 falls within the proscription against retroactive application of statutes reducing damages in an action based upon an injury incurred prior to the statute's effective date. (Ops.Cal.Legis. Counsel, No. 19849 (Sept. 12, 1975) 13 Assem. J. (1975-1976 Second Ex. Sess.) Malpractice, pp. 377-378.)

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.