[Civ. No. 23704. Third Dist. Jan. 10, 1985.]

SUSAN PERRY, Plaintiff and Appellant, v.
HEAVENLY VALLEY, Defendant and Respondent.

COUNSEL

Kenneth C. Rollston and Robert M. Henderson for Plaintiff and Appellant.

Hancock, Rothert & Bunshoft and Paul S. Rosenlund for Defendant and Respondent.

OPINION

ROBIE, J.*—Plaintiff Susan Perry appeals from a judgment in favor of defendant Heavenly Valley (Heavenly) in an action for negligence, entered after the trial court granted Heavenly's motion for summary judgment. Plaintiff contends the court erred in determining an amendment to the Workers' Compensation Act which severely limited the "dual capacity doctrine" applies retroactively to the present case. (Lab. Code, § 3602, subd. (a); Stats. 1982, ch. 922, § 6.) We agree and shall reverse the judgment.

FACTS

On October 10, 1979, plaintiff filed a complaint alleging she was employed by Heavenly as a ski racing coach at its ski resort. At her request, an employee of Heavenly's ski rental and repair shop mounted bindings on her skis. The shop provides ski rentals and repairs to the general public. As

*Assigned by the Chairperson of the Judicial Council.

a proximate cause of the employee's negligence in mounting plaintiff's bindings, they separated from the skis while plaintiff was engaged in the performance of her duties as a racing coach, causing her to fall and sustain injuries. Plaintiff applied for and received workers' compensation benefits.

Heavenly demurred and filed a motion to dismiss, asserting the court did not have subject matter jurisdiction because plaintiff's exclusive remedy was under the Workers' Compensation Act. Plaintiff contended she was entitled to bring a common law action for negligence against Heavenly under the "dual capacity doctrine" established in *Duprey* v. *Shane* (1952) 39 Cal.2d 781 [249 P.2d 8]. The trial court overruled the demurrer and denied the motion to dismiss.

Heavenly petitioned this court for a writ of mandate to compel the trial court to sustain the demurrer and grant its motion to dismiss. We issued a writ of mandate directing the trial court to sustain the demurrer with leave to amend and denied the motion to dismiss.[1] We held plaintiff's action did not come under the dual capacity doctrine, but rather her exclusive remedy against Heavenly was under the workers' compensation laws. (Lab. Code, §§ 3200 et seq., 3600, 3601.)[2]

Thereafter, on November 21, 1980, plaintiff filed a second amended complaint in which she additionally alleged the services she received from Heavenly's ski shop were not available to her as an incident to her employment, but rather she obtained the services as a member of the general public and not as an employee, and in mounting plaintiff's bindings Heavenly acted in a capacity toward her unrelated to the employer-employee relationship. Heavenly again demurred and moved for summary judgment on the ground plaintiff's exclusive remedy was workers' compensation. Plaintiff again contended the amended complaint stated a cause of action under the dual capacity doctrine. The trial court overruled the demurrer and denied Heavenly's motion for summary judgment. We denied Heavenly's petition for writ of mandate.

In 1982, the Legislature passed an amendment to section 3602 of the Labor Code (eff. Jan. 1, 1983) which abolished the dual capacity doctrine

---

[1]*Heavenly Valley* v. *Superior Court* (Aug. 21, 1980, 3 Civ. 19375). We take judicial notice of this decision. (Evid. Code, §§ 452, subd. (d); 459.)

[2]Unless otherwise indicated all future section references are to the Labor Code.

except in limited circumstances not applicable here. (Stats. 1982, ch. 922, § 6.)[3]

On October 17, 1983, Heavenly made a motion to determine the applicability of amended section 3602 to the present action. Thereafter, it filed a new motion for summary judgment on the ground plaintiff's dual capacity action was precluded by amended section 3602. Heavenly also reiterated arguments from its previous motion for summary judgment and incorporated the papers therefrom. The trial court granted the motion and entered judgment for Heavenly, concluding the amendment to section 3602 applied retroactively to the present action. Plaintiff appeals.

DISCUSSION

I

■ Plaintiff contends the trial court erred in determining the amendment to section 3602 is retroactive and applicable to cases pending at the time of its enactment. We agree.[4]

■ It is a well established canon of statutory construction "that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent." (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393 [182 P.2d 159].) "The rule to be applied is the same with respect to *all* statutes, and none of them is retroactive unless the Legislature has expressly so declared." (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 173 [18 Cal.Rptr. 369, 367 P.2d 865], italics added.)

■ We begin our analysis by examining the text of the statute. The Legislature did not include in the amendment to section 3602 any provision making the statute retroactive. The Legislature is well acquainted with the rule requiring a clear expression of retroactive intent (*DiGenova* v. *State Board of Education, supra,* 57 Cal.2d at p. 176), and the fact that it did not so express itself or did not make the amendment effective immediately is a

---

[3]Section 3602, subdivision (a), of the Labor Code now provides: "Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is, except as specifically provided in this section and Sections 3706 and 4558, the sole and exclusive remedy of the employee or his or her dependents against the employer, and the fact that either the employee or the employer occupied another or dual capacity prior to, or at the time of, the employee's industrial injury shall not permit the employee or his or her dependents to bring an action at law for damages against the employer."

[4]*At least one appellate court has concluded, without analysis, that the amendment to section 3602 is not retroactive.* (*Horney* v. *Guy F. Atkinson Co.* (1983) 140 Cal.App.3d 923, 930, fn. 4 [190 Cal.Rptr. 18].)

significant indication it did not intend to apply the amendment retroactively. (*Fosgate* v. *Gonzales* (1980) 107 Cal.App.3d 951, 960 [166 Cal.Rptr. 233].)

█ Heavenly nevertheless contends the amendment should apply retroactively and relies on a letter written by Senator Daniel Boatwright and printed in the Senate Journal in which Senator Boatwright expresses his intentions in voting for the amendment.[5] (8 Sen. J. (1981-82 Reg. Sess.) dated Aug. 31, 1982, at pp. 14417-14418.)

---

[5]The letter and accompanying motion read as follows:

"MOTION TO PRINT IN JOURNAL

"Senator Boatwright moved that the following letter of intent be printed in the Journal.

"Motion carried.

"Senate, California Legislature
Sacramento, August 31, 1982

"Hon. David Roberti, President pro Tempore:

"Dear Mr. President: As a member of the Industrial Relations Committee, the committee which considers all matters pertaining to the workers' compensation system, I respectfully submit this communication to explain my intentions in voting for Assembly Bill 684 as it was amended in Conference Committee, August 17, 1982.

"Every segment of the workers' compensation community agrees that inflation has seriously undermined the workers' compensation system. The benefit increases contained in the Assembly Bill 684, while substantial, must be viewed as adjustments for the effects of inflation over the last decade.

"The bill also increases the penalties for serious and willful misconduct of the employer by removing the current $10,000 maximum penalty. However, the bill makes no substantive or procedural changes in the legal standard of the conduct necessary to impose employer liability for serious and willful misconduct in Sections 4553 and 4553.1 of the Labor Code.

"Perhaps most importantly, the bill contains strict limitations on the 'dual capacity' doctrine, which under certain circumstances permits civil damage lawsuits by employees against their employers. Certain narrow exceptions are granted for intentional or flagrant misconduct of an employer, but notwithstanding these exceptions, a directive is set forth that the workers' compensation system is the exclusive remedy for injured workers.

"Specifically, the bill would abolish the civil remedies granted to an employer (*sic*) as enunciated in *Bell* vs. *Industrial Vangas, Inc.* 30 Cal.3d 268, *Douglas* vs. *E. & J. Gallo*, 69 Cal.App.3d 103, and *Moreno* vs. *Leslie's Pool Mart,* 110 Cal.App.3d 179.

"The bill would also codify certain limited exceptions to the exclusive remedy provision of the law, specifically, *Magliulo* vs. *Superior Court,* 47 Cal.App.3d 760, which grants a civil remedy to an employee who is physically assaulted by his employer; *Johns-Manville Products Corporation* vs. *Superior Court,* 27 Cal.3d 465, which grants a civil remedy to an employee whose industrial injury was aggravated by the employer's fraudulent concealment of the existence of that injury; and provides for civil remedy by an employee if he is injured by a defective product manufactured by the employer after that product is transferred for consideration to an independent third person and later provided for the employee's use by someone other than the employer. The bill also restates the proposition that an employee's civil remedies remain where the injury does not occur in the course and scope of employment, i.e., where the injury is not industrial.

"The bill creates a further, final, exception to exclusive remedy and allows a civil cause of action by an employee where injury results from the removal of a safety guard from a power press or failure to install such guards on a power press. However, such removal or failure to install must have been specifically authorized by the employer under conditions known by the employer to create a probability of serious injury or death and the employer must have been notified by the manufacturer of the power press that the guards were re-

To the extent the letter merely reflects the personal views of Senator Boatwright, it is irrelevant. As this court said recently, ". . . the Legislature is not a person. What goes on in the minds of individual legislators when enacting a statute cannot fix its meaning." (*In-Home Supportive Services* v. *Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 739 [199 Cal.Rptr. 697].) "In construing a statute we do not consider the motives or understandings of individual legislators who cast their votes in favor of it. [Citations.]" (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589-590 [128 Cal.Rptr. 427, 546 P.2d 1371].)[6]

However, Heavenly's reliance on the letter by Senator Boatwright is misplaced for a more fundamental reason: it does not support a retroactive application of the amendment. While the letter points to the expressed need to "set forth clear tests for the court to follow when hearing 'dual capacity' cases" and the concern that "citizens of California simply cannot afford a dual system of both workers' compensation and tort liability for many job related injuries," these statements and others in the letter merely state policy reasons that may have been advanced in support of the amendment. They cannot reasonably be construed to support a retroactive intent.

 Heavenly next contends the presumption against retroactivity does not apply to the amendment because it merely clarifies existing law. (See

---

quired. This very narrow exception to the exclusive remedy provisions is designed to correct intentional abuses involving power presses only.

"The bill clarifies application of the liberal construction provision of Labor Code Section 3202 by providing that it does not apply to evidentiary questions of fact. It adopts the existing civil evidentiary standard or preponderance of the evidence which is necessary to sustain a party's burden of proof on disputed facts.

"A statute of limitations for vocational rehabilitation is provided which would require an employee to request rehabilitation benefits within a 1- or 5-year period, depending upon the circumstances. Presently, there is no limitation to the time in which a worker may request rehabilitation.

"I believe that Assembly Bill 684 was a realistic compromise that will serve to maintain a strong workers' compensation system in this state. Most importantly, AB 684 is a directive to the courts that this Legislature has overturned the 'dual capacity' doctrine, except for the limited instances specified above, and is an expression of the Legislature to exercise its plenary power set forth by Article XIV of the California Constitution 'to create and enforce a complete system of workers compensation.' I believe this bill now sets forth clear tests for the court to follow when hearing 'dual capacity' cases. The citizens of California simply cannot afford a dual system of both workers' compensation and tort liability for many job-related injuries.

"Sincerely,
DANIEL E. BOATWRIGHT"

[6]In *Marriage of Bouquet* the Supreme Court departed from the long established general rule and considered a letter by the author of the legislation in question. However, several factors distinguish *Marriage of Bouquet* from the instant case, including the fact the constitutionality of the prior law was seriously suspect. The court concluded it could reasonably be inferred the Legislature wished to replace the possibly infirm law with an unobjectionable law as soon as possible. (*Id.*, at p. 588.) Also, the legislator in *Marriage of Bouquet* was the author of the bill and he expressly stated the legislation was intended to apply retroactively.

*Balen* v. *Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 828, fn. 8 [114 Cal.Rptr. 589, 523 P.2d 629]; *Del Castello* v. *State of California* (1982) 135 Cal.App.3d 887, 893, fn. 8 [185 Cal.Rptr. 582]; *County of Sacramento* v. *State of California* (1982) 134 Cal.App.3d 428, 433-434, fn. 5 [184 Cal.Rptr. 648].) The dual capacity doctrine has been the law as established by judicial decisions in California since 1952. (*Duprey* v. *Shane, supra,* 39 Cal.2d 781.) Since the amendment to section 3602 virtually eliminated most existing civil remedies provided by case law, in no respect can it be considered "clarification" of the workers' compensation law and nothing in the record reflects any such contention. The amendment is not retroactive under this rationale.

Heavenly also contends the amendment is retroactive because it is merely a procedural or remedial change, not subject to the presumption against retroactivity unless vested rights are affected. ■ Heavenly confuses the issue, which is not whether the Legislature had the *power* to make the amendment retroactive, but rather whether it *did* make it retroactive, since the rule that a statute will not be *construed* to be retroactive unless the Legislature clearly so intends applies to "procedural" as well as "substantive" changes in the law. (5 Witkin Summary of Cal. Law (8th ed. 1974) § 288, p. 3578.)

Heavenly evinces its confusion of the issue in two of the cases it cites in support of its position, *San Bernardino County* v. *Indus. Acc. Com.* (1933) 217 Cal. 618 [20 P.2d 673], and *City of Los Angeles* v̌. *Oliver* (1929) 102 Cal.App. 299 [283 P. 298]. In *Aetna Cas. & Surety Co.* v. *Indus. Acc. Com., supra,* 30 Cal.2d 388, the respondent, like Heavenly, relied upon these two cases, among others, in contending the presumption against retroactivity is not applicable to procedural and remedial statutes. The Supreme Court pointed out the error in doing so, stating: "In those cases, . . . it was held that the language of the statutes showed that the Legislature *intended* them to be applied retroactively, and the court was concerned mainly with the question of whether the Legislature has *power* to give those laws such retroactive effect. *Since the question of the constitutionality of retroactive legislation and the question of the applicability of a rule of statutory construction are distinct* [citation], *these cases are not in point.*" (At pp. 393-394; italics added.)

The *Aetna* court rejected a simple procedural-substantive approach to the question of retroactivity. This approach, stated the court, "assumes a clear-cut distinction between purely 'procedural' and purely 'substantive' legislation. In truth, the distinction relates not so much to the form of the statute as to its *effects*. If *substantial* changes are made, even in a statute which might ordinarily be classified as procedural, the operation on existing rights

would be retroactive because the *legal effects* of past events would be changed, and the statute will be construed to operate only in futuro unless the legislative intent to the contrary clearly appears." (30 Cal.2d at p. 394, italics added.)

■ As the court pointed out, some procedural statutes, even when applied to pending actions, are not subject to the presumption against retroactivity because in affecting only procedures to be applied in the future they are not truly retroactive in effect. (*Ibid.*) However, any law which is applied to an existing action is retroactive in effect if it " 'affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute.' " (*Id.*, at p. 391.)

■ Under this standard, application of amended section 3602 to the present action clearly would have a retroactive effect. The "legal effect" of past acts would be changed. Where previously plaintiff could have brought a common law negligence action against Heavenly under the dual capacity doctrine for damages she received over and above those paid by workers' compensation, such action would now be barred. Therefore, the amendment is subject to the presumption against retroactivity.

Other cases cited by Heavenly do not assist its cause. *Strauch* v. *Superior Court* (1980) 107 Cal.App.3d 45 [165 Cal.Rptr. 552], merely involved a change in the procedures for filing a certificate of merit incident to a medical malpractice action. The statute did not operate retroactively because it related only to procedures to be followed in the future. (At pp. 48-49.) *Alta Loma School Dist.* v. *San Bernardino County Com. on School Dist. Reorganization* (1981) 124 Cal.App.3d 542 [177 Cal.Rptr. 506], is like the cases cited in *Aetna* in that the court concluded the Legislature *intended* the statute in question to apply retroactively. (At pp. 553-554.)

Finally, Heavenly contends the remedy provided by the dual capacity doctrine is statutory and the repeal of a statutory remedy without a savings clause will terminate all pending actions based on that statute. (*Fosgate* v. *Gonzales, supra,* 107 Cal.App.3d at p. 960.) We agree with this statement of the law, but it is not applicable to the present case. Concededly, the dual capacity doctrine is premised upon an interpretation of Labor Code section 3852, which provides the workers' compensation remedy does not preclude an action for damages "against any person other than the employer"; the rationale being that when an employer acts in a capacity other than of an employer he is a "person other than the employer" under section 3852. (See *Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 274 [179 Cal.Rptr. 30, 637 P.2d 266].) ■ However, the *remedy* allowed by the dual capacity doctrine is not statutorily based, but rather is based on com-

mon law. As the Supreme Court explained in *D'Angona* v. *County of Los Angeles* (1980) 27 Cal.3d 661 [166 Cal.Rptr. 177, 613 P.2d 238], in discussing the basis of the dual capacity doctrine: "if any injury arises from a relationship which is distinct from that of employer and employee and invokes a different set of obligations than the employer's duties to its employee, there is no justification for shielding the employer from liability *at common law.*" (At p. 666; italics added.) The remedy under the dual capacity doctrine is not statutory.

Accordingly, we conclude the limitations on the dual capacity doctrine under amended section 3602 do not apply to an action in which the events giving rise to it occurred prior to the effective date of the amendment. (*Fosgate* v. *Gonzales, supra,* 107 Cal.App.3d at p. 961.) Plaintiff was not precluded by the amendment from bringing a common law action for negligence under the dual capacity doctrine.

## II

Heavenly contends that even if the amendment to section 3602 is not retroactive, plaintiff's additional allegations do not bring her case within the dual capacity doctrine. We disagree.

Even before the amendment to section 3602, it was established that an employee whose disability arises from injury incurred in the course of employment is confined to workers' compensation benefits against the employer or its insurance carrier. (*D'Angona* v. *County of Los Angeles, supra,* 27 Cal.3d at p. 664.) However, the dual capacity doctrine is premised upon the principle that one person can have separate and distinct legal personalities—that "[a]n individual can act in two or more different, distinct capacities, either simultaneously or sequentially, giving rise in law to separate and distinct sets of obligations." (*Bell* v. *Industrial Vangas, Inc., supra,* 30 Cal.3d at p. 273, fn. 4.)

The dual capacity doctrine was first applied in the case of *Duprey* v. *Shane, supra,* 39 Cal.2d 781. There, a nurse was injured while employed by a chiropractor. Although the chiropractor carried workers' compensation insurance, he undertook personally to treat the nurse and did so negligently. The court upheld a recovery for malpractice, concluding that the chiropractor acted as an attending doctor rather than as an employer, thereby rendering him a " ' "person other than the employer" within the meaning of section 3852 of the Labor Code. . . .' " (At p. 793.)

The Supreme Court reapplied the doctrine in the medical malpractice context in *D'Angona* v. *County of Los Angeles, supra,* 27 Cal.3d 661. There

the court stated, ". . . the decisive test of dual capacity is whether the nonemployer aspect of the employer's activity generates a different set of obligations by the employer toward the employee." (At p. 667.) The court held: "In treating plaintiff's disease the county owed her a duty *separate and distinct* from its duty as her employer, and this was the duty to provide medical care free of negligence—the same duty that it owes to any member of the public who becomes a patient at its hospital." (At p. 669; italics added.)

The dual capacity doctrine has been applied in other contexts. In one case, it was applied where the employer in one capacity supplied defective products to an employee from a separate legal entity of which the employer was also a general partner. (*Dorado* v. *Knudsen Corp.* (1980) 103 Cal.App.3d 605, 612 [163 Cal.Rptr. 477].) Most commonly, the dual capacity doctrine has been applied where an employee has been injured by a defective product which the employer manufactures for sale to the public. (See *Bell* v. *Industrial Vangas, Inc.*, *supra*, 30 Cal.3d 268; *Moreno* v. *Leslie's Pool Mart* (1980) 110 Cal.App.3d 179 [167 Cal.Rptr. 747, 9 A.L.R.4th 869]; *Douglas* v. *E. & J. Gallo Winery* (1977) 69 Cal.App.3d 103 [137 Cal.Rptr. 797].)

As discussed by the Supreme Court in *Bell*, implicit in the purpose of the Workers' Compensation Act ". . . is the concept that workers' compensation statutes relate generally to the legal status or relationship between *employer and employee.*" (*Bell*, *supra*, at p. 276, original italics.) Thus, "[l]iability under the Act is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment and because the injury arose out of and in the course of the employment. If the duty flows solely from the employment relationship and the injury 'arises out of' and 'during the course of' that employment, then the recited policy considerations behind the exclusive remedy in workers' compensation mandating that the employer be immune from tort liability have viability. *If, however, an additional concurrent duty flows from an 'extra' employer status or a relationship that is distinct from that of employer-employee and invokes a different set of obligations, then a second capacity arises and the employer status is coincidental. The employer should then be treated as any third party tortfeasor, not immune from a common law tort action.*" (*Id.*, at p. 277, italics added.)

The dual capacity doctrine is supported as well by considerations of public policy. When an employee's injury is caused concurrently by the employer's breach of a duty owed to *all* members of the public, denying that person a common law cause of action would strip the employee of a cause of action available to nonemployees simply because he or she is an employee. As the Supreme Court in *Bell* observed in the context of a products liability case:

"The trial court refused Bell [the plaintiff] the protection granted to every other user of manufactured products. Such result runs counter to the long term trend of California tort law and disrupts accepted loss distribution systems. . . . [¶] The obligations Vangas [the defendant] owed as a manufacturer-designer-seller of equipment to all users was entirely independent of those obligations imposed upon it as an employer. [Citations.] 'Manufacturer' Vangas owed a duty to *all* foreseeable users of its product not to introduce a defective product into the stream of commerce. [Citation.] Neither law nor right reason excludes employees of a manufacturer from this broad rule. [¶] The public policy goals underlying product liability doctrine should not be subverted by the mere fortuitous circumstances that the injured individual was an employee of the manufacturer whose product caused the injury. If the injured individual had not been an employee, he would have had a cause of action against the defendant. To deny Bell such a cause of action because he is an employee, gives the employer more protection than envisioned by the 1911 [Workers' Compensation] Act." (*Bell* v. *Industrial Vangas, Inc.*, supra, 30 Cal.3d at pp. 278-280; italics added.) This result "would as well inflict 'a harsh and incongruous result' in the form of an inadequate recovery for injuries received." (*Id.*, at p. 282.)

Hence, the rule is that ". . . a coincidental employment relationship will not shield an employer from a common law liability where the concurrent cause of the injury is attributable to the employer's separate and distinct relationship to the employee and which invokes a different set of obligations than the employer's duties to its employees." (*Id.*, at p. 282.)

██ The principles we have discussed above apply to the case before us. If, as plaintiff alleges, she sought the mounting of her ski bindings as a member of the public and Heavenly mounted her bindings in its capacity as a provider of services to the general public and not as an incident to the employer-employee relationship, then Heavenly owed the same duty of care to plaintiff that it owed to any member of the public whose skis it serviced—the duty to service skis without negligence. This duty arises from a separate and distinct relationship from that of employer-employee and invokes a different set of obligations than Heavenly's duties to its employees. If the breach of the duty was a concurrent cause of plaintiff's injuries, Heavenly should not be shielded from common law liability.

In negligently mounting the bindings on plaintiff's skis, Heavenly exposed plaintiff to the same risk of injury to which any member of the public seeking Heavenly's services would be exposed. Doubtless if plaintiff had not been an employee of Heavenly she would be able to bring a common law action against it. Similarly, if she had received services from a shop not owned by Heavenly she would be able to maintain an action against that

shop. Thus, denying her a common law action against Heavenly would deny her an action available to every other member of the public by the fortuitous circumstance that the shop which serviced her skis is owned by the same company which employs her as a ski racing coach. She would potentially be left with less of a recovery than that available to others.[7]

 Heavenly further contends the dual capacity doctrine should not be applied beyond the particular fact situations to which it has previously been applied—medical malpractice and products liability. We disagree. There is no sound reason for not extending the dual capacity doctrine to factual situations to which it clearly applies. Applying the doctrine to products liability was itself an extention of the doctrine from the medical malpractice context. In the earliest products liability case, *Douglas* v. *E. & J. Gallo Winery, supra,* 69 Cal.App.3d 103, the defendant argued for limiting the doctrine to medical malpractice cases. The court rejected this argument, stating ". . . there is no reason to limit the *Duprey* rule to medical malpractice. The critical issue is the capacity or role in which the defendant is acting when the tort sued upon is committed." (*Id.,* at pp. 108-109, fn. 3.) Similarly, here, the critical issue is not the particular profession or business in which the defendant was engaged, but whether it was engaged in an activity which generated separate obligations to the employee unrelated to those flowing from the employer-employee relationship.

Heavenly focuses on language from *Douglas* stating that "We limit the holding of this case to a defendant who engages in manufacturing for sale to the general public." (*Id.,* at p. 113.) The relevant language, however, is not "manufacturing," but rather "for sale to the general public." The court included this language to make clear the dual capacity doctrine does not apply where the defective product causing the employee's injury is not sold to the general public. Only when a product is sold to the general public does the employer assume a duty of care unrelated to the employer-employee relationship, for the employee is exposed to the same risk to which the public is exposed. Where the public does not share in the risk, it is a risk unique to the employment and workers' compensation is the exclusive remedy against the employer. (See *Nicewarner* v. *Kaiser Steel Corp.* (1983) 143 Cal.App.3d 31, 37-40 [191 Cal.Rptr. 522]; *Bonus-Built, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429, 439-440 [186 Cal.Rptr. 357]; *Shook* v. *Jacuzzi* (1976) 59 Cal.App.3d 978, 981 [129 Cal.Rptr. 496].)

---

[7]To allow an action against Heavenly would not place burdens on it greater than those imposed on nonemployers, for plaintiff is not entitled to double recovery. To the extent her damages were compensated for by the workers' compensation award, Heavenly would be entitled to a setoff against any recovery plaintiff might obtain in this action. (*D'Angona* v. *County of Los Angeles, supra,* 27 Cal.3d at pp. 668-669).

█ In our case, plaintiff was exposed to the same risk as any member of the public who received negligent service from Heavenly's ski shop. It is irrelevant that particular mounting devices were used on her skis at her request. Services or repairs performed on skis are necessarily unique to the individual needs or desires of each skier. Medical treatment, too, is necessarily tailored to the particular individual and his or her illness or injury, yet this does not preclude the applicability of the dual capacity doctrine to medical malpractice.

Heavenly further contends our case is controlled by *Dixon* v. *Ford Motor Co.* (1975) 53 Cal.App.3d 499 [125 Cal.Rptr. 872]. There, survivors of an employee who died on the job brought a wrongful death action against his employer and a nurse and orderly in the company's employ. In the action, plaintiffs alleged the employee received negligent medical treatment at a plant aid station. The court affirmed the trial court's grant of a motion for summary judgment on the ground the exclusive remedy was workers' compensation. *Dixon* is clearly distinguishable from the present case because the plant aid station was maintained *exclusively* for employees of the plant and for the mutual welfare and convenience of the employer and employees. Thus, it was analogous to a manufacturer providing a product which is not sold to the general public.

In our case, according to plaintiff's allegations, Heavenly did not provide ski repair services exclusively to its employees for their mutual benefit and convenience. Rather, it provided services to plaintiff in its capacity as a repairer of skis for the general public and owed to her the same duty it owed to the public. Admittedly, Heavenly alleges otherwise in its motion for summary judgment. However, plaintiff declares in her opposition that she went to the ski shop as a member of the public and expected to pay for the services as would any member of the public; that the shop was not set up for the free use of employees as an incident to their employment; and that she went there only because it was more conveniently located than other shops. The papers in support and opposition thus raise triable issues of material fact that are not appropriately resolved in a motion for summary judgment. (Code Civ. Proc., § 437c.)

█ Heavenly finally contends we are bound by the law of this case in holding plaintiff does not have an action under the dual capacity doctrine, citing our decision on the demurrer to plaintiff's original complaint. (See p. 499, *ante.*) That decision, however, must be read in the context of the complaint to which it referred. In her original complaint, plaintiff alleged no more than that she obtained the mounting of her bindings from Heavenly's repair shop and that the shop provides services to the general public. She did not allege she received the services as a member of the public or

that the services were not available as an incident to her employment. She added these allegations to her amended complaint. We clearly gave plaintiff the opportunity to amend her complaint by ordering the court to sustain the demurrer with leave to amend and to deny Heavenly's motion to dismiss. Plaintiff's new allegations materially add to the complaint and bring it within the dual capacity doctrine.

In summary, plaintiff's amended complaint states a common law cause of action under the dual capacity doctrine. Triable issues of material fact exist which preclude granting Heavenly's motion for summary judgment. Plaintiff's action is not barred by the amendment to section 3602 abolishing the dual capacity doctrine.

The judgment is reversed.

Puglia, P. J., and Sims, J., concurred.