[No. A035818. First Dist., Div. Five. Sept. 19, 1986.]

JAMES RUSSELL, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
ASBESTOS CLAIMS FACILITY DEFENDANTS et al.,
Real Parties in Interest.

**COUNSEL**

Bryce C. Anderson, Harry F. Wartnick, Cartwright, Sucherman & Slobodin, Joseph D. Davis and Davis & Lewis for Petitioner.

No appearance for Respondent.

Kelly C. Wooster, Stephen M. Snyder, James L. Miller, Barbara A. Caulfield, Brobeck, Phleger & Harrison, Eliot S. Jubelirer, Morgenstein, Ladd & Jubelirer, James N. Penrod, Hassard, Bonnington, Rogers & Huber, Eugene Brown, Jr., Deborah A. Freeman, Hardin, Cook, Loper, Engel & Bergez, John R. Reese, Carole S. Ungvarsky and McCutchen, Doyle, Brown & Enersen for Real Parties in Interest.

Fred J. Hiestand as Amicus Curiae on behalf of Real Parties in Interest.

**OPINION**

**LOW, P. J.**—We hold that the Fair Responsibility Act of 1986, popularly known as Proposition 51, is not retroactive.

Petitioner James Russell is plaintiff in a personal injury action pending before respondent superior court. Russell alleges he has contracted a lung disease from exposure to asbestos, and names as defendants several companies who manufactured or distributed the asbestos products to which Russell was exposed during his lifetime. The defendants' liability was governed by the traditional principle of joint and several liability: if a defendant was found to be *a* proximate cause of Russell's injuries, even if not the *sole* proximate cause, that defendant could be held liable to Russell for all of his damages, subject to the defendant's right of indemnification from other responsible parties. (See generally, *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899].)

Russell's suit was awaiting trial on June 3, 1986, when the voters approved Proposition 51 and enacted the Fair Responsibility Act of 1986 (hereafter interchangeably Act or Proposition 51). The Act purports to eliminate joint and several liability for noneconomic damages, primarily damages for pain and suffering, and substitutes a rule of several liability only. A tortfeasor would be liable only for a percentage of a plaintiff's noneconomic damages, in proportion to the tortfeasor's actual responsibility for the injury. The Act's core provision is new Civil Code section 1431.2, subdivision (a), which provides that "[i]n any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount." (Ballot Pamp., Prop. 51 (June 3, 1986) p. 33.)

As an initiative measure, the Act went into immediate effect the day following the election. While it clearly applied prospectively to causes of action arising after its passage, the Act contained no express provision for retroactive application to pending cases based on causes of action which had already accrued prior to its effective date. The issue of retroactivity was litigated in a number of superior courts. If Proposition 51 were retroactive, codefendants in tort cases would no longer be subject to a judgment for the total amount of the plaintiff's damages; their liability for noneconomic harm would be reduced to a percentage of the total. Furthermore, tort defendants argued that the percentage calculation should take into account the fraction of responsibility of those tortfeasors absent from the case due to immunity, bankruptcy or other reasons. If the liability of absent defendants were considered, the comparative percentages of fault of the present defendants would correspondingly decrease, and the sum total of their individual percentages would not add up to the total. As a result, a plaintiff faced with absent defendants, such as Russell, could receive less than the total amount of awardable damages for noneconomic harm.

Russell and real parties in interest both filed motions *in limine* on the retroactivity question. The superior court ruled that the Act was retroactive and applied to Russell's cause of action. Russell petitioned the Supreme Court for a writ of mandate in the exercise of its original jurisdiction. The court declined to hear the matter in the first instance and transferred the matter to this court. We conclude the trial court's ruling in favor of retroactivity was in error. Accordingly, we issue the peremptory writ.

I

We do not determine the constitutionality of Proposition 51 or interpret its substantive provisions. We decide only that the Act is not

retroactive, and may apply only to causes of action which accrue on or after its effective date of June 4, 1986.

■ A retroactive statute is one which "'affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute.'" (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 391 [182 P.2d 159], quoting *American States W. S. Co.* v. *Johnson* (1939) 31 Cal.App.2d 606, 613 [88 P.2d 770]; see 2 Sutherland, Statutory Construction (4th ed. 1973) § 41.01, p. 245.) Retroactive laws are generally disfavored because the parties affected have no notice of the new law affecting past conduct. "[S]uch laws disturb feelings of security in past transactions." (2 Sutherland, *supra*, § 41.04, at p. 253, fn. omitted.) Consequently, newly enacted statutes are presumed to apply prospectively only unless a clear intent to the contrary is expressed by the Legislature. (*Ibid.; Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* at p. 393; see *White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870, 884 [221 Cal.Rptr. 509, 710 P.2d 309].) The Civil Code, which Proposition 51 amends, specifically embodies this presumption: "No part of [this Code] is retroactive, unless expressly so declared." (Civ. Code, § 3.) Only when the legislative intent is clear is retroactive application permissible; even then the Legislature is not empowered to retroactively legislate to the impairment of contracts or the abrogation of vested rights. (See *In re Marriage of Buol* (1985) 39 Cal.3d 751, 757 [218 Cal.Rptr. 31, 705 P.2d 354]; 2 Sutherland, *supra*, §§ 41.04-41.07, 41.09 at pp. 252-276, 280-281.)

Because the Act was enacted as an initiative measure, we look to the intent of the voters to assess the requisite legislative intent for retroactive application. (See *Mannheim* v. *Superior Court* (1970) 3 Cal.3d 678 [91 Cal.Rptr. 585, 478 P.2d 17].) However, we must first resolve real parties' argument that the Act is not subject to the presumption against retroactivity because it is a "procedural" and not a "substantive" statute.

Analyses of statutory retroactivity frequently distinguish between "substantive" and "procedural" statutes. Substantive laws, affecting substantive rights, invoke the general disfavor of retroactivity and are subject to the presumption against such application. Such statutes "affect the legal rights and obligations arising out of past actions" (*Joseph* v. *Lowery* (1972) 261 Ore. 545 [495 P.2d 273, 275]) and "''''vary existing obligations contrary to their situation when entered into''''" (*Costa* v. *Lair* (1976) 241 Pa.Super. 517 [363 A.2d 1313, 1314]). In contrast, it is said that statutory changes affecting matters of procedure only, or modifying a remedy and not a substantive right, may be freely applied to past transactions without recourse to the presumption and the corollary assessment of legislative intent. (See, e.g., *Commitment of Askew* (La.App. 1978) 359 So.2d 227, 229; *Joseph* v. *Lowery, supra,* 495 P.2d at p. 275; *Costa* v. *Lair, supra,* 363 A.2d at p. 1314.)

Real parties claim the Act is merely "procedural." They argue that nothing in the Act changes rules of substantive liability or diminishes the total amount of recovery theoretically available to the plaintiff;[1] the Act merely alters the "measure of damages" by reallocating recoverable noneconomic damages among individual defendants according to the percentage of actual fault. We disagree.

■ The substantive-procedural distinction does not prevail in California because both "procedural" and "substantive" statutes are subject to the presumption against retroactive effect. (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* 30 Cal.2d at pp. 394-395; *Perry* v. *Heavenly Valley* (1985) 163 Cal.App.3d 495, 503 [209 Cal.Rptr. 771]; see *DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 173 [18 Cal.Rptr. 369, 367 P.2d 865] [rule against retroactivity "is the same with respect to *all* statutes, and none of them is retroactive unless the Legislature has expressly so declared." (Italics added.)].)

Real parties nevertheless contend that a line of Supreme Court decisions supplies authority for the retroactive application of procedural statutes free of the disabling presumption. These decisions, however, involve statutory changes in the measure of damages which the Supreme Court found were clearly *intended* by the Legislature to have retroactive effect. The question in those cases was not whether an intent need be found to overcome the presumption, but whether the Legislature with a clear intent to retroactively legislate had the power to do so, i.e., whether the new law would interfere with a contract or a vested right. (See *Tulley* v. *Tranor* (1878) 53 Cal. 274, 278-279; *Feckenscher* v. *Gamble* (1938) 12 Cal.2d 482, 499-500 [85 P.2d 885]; *Stout* v. *Turney* (1978) 22 Cal.3d 718, 727-728 [150 Cal.Rptr. 637, 586 P.2d 1228]; see also *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 145, fn. 13 [135 Cal.Rptr. 802].) These cases neither support real parties' position nor detract from the general principle that all statutes are subject to the presumption against retroactivity.[2]

---

[1] This argument, of course, does not take into account the problem of absent defendants diminishing the total available damages.

[2] Real parties' misinterpretation of this line of cases is somewhat understandable. While *Tulley* makes it clear that the Legislature intended retroactive application, *Feckenscher* is less explicit. In *Aetna,* however, the Supreme Court construed *Feckenscher* as a case in which the Legislature intended retroactive application. (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com., supra,* 30 Cal.2d at p. 393.) In *Glendale,* the Court of Appeal seemed to imply the presumption against retroactivity was inapplicable, but simply applied the new law in a cursory comment in a footnote which cited only *Feckenscher* in support of its summary statement that the new measure of damages could apply retroactively. Likewise, *Stout* could be read as applying a damage law retroactively without recourse to legislative intent. The court's analysis could have been more thorough and its language more precise; the opinion did note, however, that it was "clear" that the new damage provision applied retroactively. Because the court's conclusion was immediately followed by direct citation to only *Feckenscher, Tulley* and other cases involving statutes clearly intended to be retroactive, the *Stout* court could have reached no other conclusion than that what was "clear" was the Legislature's intent to apply the new damage provision retroactively.

Other cases have refused to apply new damage provisions retroactively in the absence of clear legislative intent, on the ground that the new statutes reduced the amount of available damages and thus worked a "modification of liability," changing the legal effect of past transactions, rights and obligations. (See *Robinson* v. *Pediatric Affiliates Medical Group, Inc.* (1979) 98 Cal.App.3d 907, 912 [159 Cal.Rptr. 791]; *Bolen* v. *Woo* (1979) 96 Cal.App.3d 944 [158 Cal.Rptr. 454]; cf. *White* v. *Lyons* (1871) 42 Cal. 279, 284-285.)

As *Aetna* makes clear, the distinction between "substantive" and "procedural" is a misdirection. Both types of statutes may affect past transactions and be governed by the presumption against retroactivity. The only exception which we can discern from the cases is a subcategory of procedural statutes which can have no effect on substantive rights or liabilities, but which affect only modes of procedure to be followed in future proceedings. As *Aetna* pointed out, such statutes are not governed by the retroactivity presumption, but not because they are "procedural" but simply because they are not in fact retroactive. (30 Cal.2d at p. 394.) *Aetna* may thus be read as drawing the true distinction not between "substantive" or "procedural" statutes, but between those affecting past transactions and those impacting only on future events.

Examples of the latter class of statutes are those involving such matters as rules of evidence in future trials (see *Morris* v. *Pacific Electric Ry. Co.* (1935) 2 Cal.2d 764, 768 [43 P.2d 276]), trial procedure (see *Estate of Patterson* (1909) 155 Cal. 626, 638 [102 P. 941]), rules of service of process (*Abrams* v. *Stone* (1957) 154 Cal.App.2d 33, 40 [315 P.2d 453]), or the awards of costs or attorney fees upon entry of judgment (*Bank of Idaho* v. *Pine Avenue Associates* (1982) 137 Cal.App.3d 5, 12-13 [186 Cal.Rptr. 695]).

■ Real parties contend Proposition 51 belongs to this subcategory of future-only procedural statutes because it affects only the allocation of damages amongst defendants and the entry of separate judgments thereon, events to occur in the future at the conclusion of the trials of pending cases. This contention is without merit. The Act, even if "procedural," affects substantive rights by diminishing an individual defendant's total liability for a major item of awardable damages. Under *Aetna* and its progeny, the Act is clearly of retroactive effect.

By the same token, we would construe the Act as "substantive" if the substantive-procedural distinction were pertinent to our analysis. While one can describe the Act as merely "reallocating damages" amongst liable defendants, the phrase "reallocating damages" is actually a semantic gloss over the Act's substantive effect. Proposition 51 significantly alters the substantive rule of joint and several liability. A tort defendant subject to

the rule no longer faces liability to the plaintiff for the totality of the judgment, but for only a fraction thereof. Given the reduction of the defendant's liability exposure, the substantive effect of Proposition 51 is evident. (See *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.*, *supra*, 30 Cal.2d 388; cf. *Robinson* v. *Pediatric Affiliates Medical Group, Inc.*, *supra*, 98 Cal.App.3d 907.)

Real parties attempt to prevent the appending of the "substantive" label by arguing the Act does not totally abrogate a plaintiff's cause of action, as did the statutes in *Fosgate* v. *Gonzales* (1980) 107 Cal.App.3d 951 [166 Cal.Rptr. 233] and *Perry* v. *Heavenly Valley*, *supra*, 163 Cal.App.3d 495. They note the total amount of damages is still theoretically recoverable (but see, fn. 1, *supra*) and stress that the Act retains joint liability for a plaintiff's economic damages. Of course, noneconomic damages often form the bulk of personal injury awards. This pragmatic observation aside, the total abrogation of a cause of action (or of a defense thereto) is not an essential prerequisite to a "substantive" label. The label may be applied if the measure increases or decreases liability but falls short of total abrogation of a cause of action or a defense. (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.*, *supra*, 30 Cal.2d 388 [new law supplemented statutory cause of action with additional category of awardable damages, thereby increasing defendant's liability]; *White* v. *Western Title Ins. Co.*, *supra*, 40 Cal.3d at p. 884 [presumption is "particularly applicable to a statute which *diminishes or extinguishes an existing cause of action*" (italics added)]; see *Wick* v. *State Acc. Ins.* (1978) 37 Ore.App. 285 [587 P.2d 477, 479] [change in statutory presumption making it more likely for employers to be found liable in certain compensation cases].)[3]

## II

For whatever reasons, the Act's proponent-authors did not place the question of retroactivity directly before the voters. As a result, this court must engage in the often Delphic exercise of divining legislative intent, a process made more difficult by the need to assess the collective intent of millions of voters rather than a legislative body keeping records of its

---

[3]The Act could also be deemed substantive for not only altering the substantive liability of each defendant vis-à-vis the plaintiff, but the liability of each defendant to each other. The Act eliminates the liability of each defendant to the others in indemnity for the totality of the judgment. In an analogous situation, courts have refused retroactive application of contribution statutes because they created a liability among defendants which did not previously exist. (*Massey* v. *Sullivan County* (1971) 225 Tenn. 132 [464 S.W.2d 548]; *Coos-Curry Elec. Cooperative* v. *Curry County* (1976) 26 Ore.App. 645 [554 P.2d 601]; *United States Fidelity & Guar. Co.* v. *Park City Corp.* (D.Ore. 1973) 397 F.Supp. 411 [applying Oregon law], affd. (9th Cir. 1975) 526 F.2d 1120.) Language to the contrary in *Augustus* v. *Bean* (1961) 56 Cal.2d 270, 272 [14 Cal.Rptr. 641, 363 P.2d 873], is dicta. The California contribution statute was expressly made applicable prospectively only, and the *Augustus* court had no cause to address a retroactivity issue.

committee hearings and thought processes.[4] Such difficulties aside, however, the intent of the electorate is our "paramount consideration." (*In re Lance W.* (1985) 37 Cal.3d 873, 889 [210 Cal.Rptr. 631, 694 P.2d 744].) We employ the traditional rules of statutory construction to assess whether the voters intended Proposition 51 to have retroactive effect.

We first look to the language of the Act itself. The failure to include an express provision for retroactivity is, in and of itself, "highly persuasive" of a lack of intent in light of Civil Code section 3. (*Helm* v. *Bollman* (1959) 176 Cal.App.2d 838, 842 [1 Cal.Rptr. 723].) Real parties correctly point out, however, that Proposition 51's silence is not conclusive. ■ The presumption against retroactivity, often discussed as if it were a substantive rule of law, is a rule of construction subordinated "to the most fundamental rule of construction, namely that a statute must be interpreted so as to effectuate legislative intent." (*Mannheim* v. *Superior Court, supra,* 3 Cal.3d at p. 686; see *Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control* (1966) 65 Cal.2d 349, 371 [55 Cal.Rptr. 23, 420 P.2d 735].) Faced with a "silent statute," a court may not assume a prospective application but must employ every method of statutory interpretation to determine intent. Only when the interpretive process proves unavailing may the court fall back on the rule against retroactive application. (*Mannheim* v. *Superior Court, supra,* at pp. 686-687; *In re Estrada* (1965) 63 Cal.2d 740, 746 [48 Cal.Rptr. 172, 408 P.2d 948].)

We look for an intent suggested or implied by the wording of the statutory provisions. (See *Mannheim* v. *Superior Court, supra,* 3 Cal.3d 678.) ■ In construing an initiative measure, we are bound to bestow upon its language both the ordinary meaning of its terms and a practical commonsense interpretation. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281].)

■ Nothing in the wording of Proposition 51 suggests an intent for retroactive application. Rather, the operative language of the Act is worded in the future tense. While Civil Code section 1431.2, subdivision (a) purports to apply to "any" tort case involving joint liability, its operative predicates are confined to the future tense: "the liability of each defendant for non-economic damages *shall be* several and *shall not be* joint. Each defendant *shall be* liable only for the amount of non-economic damages allocated in direct proportion to that defendant's percentage of fault, and a separate judgment *shall be* rendered against that defendant for that amount." (Ballot Pamp., Prop. 51, *supra,* italics added.) The phrase "shall be," to the commonsensical mind, connotes the future and implies the application of

---

[4]See *Consumers Union of U.S., Inc.* v. *California Milk Producers Advisory Bd.* (1978) 82 Cal.App.3d 433, 439, fn. 5 [147 Cal.Rptr. 265].

the subject under discussion to future events. The use of "shall be" has been held to connote a legislative intent to apply a statutory amendment prospectively only. (*Helm* v. *Bollman, supra,* 176 Cal.App.2d at pp. 842-843.)

Real parties point out the Act's language shows a design to remedy existing conditions perceived to be inequitable; from this they argue an implied intent for application to pending cases. Civil Code section 1431.1, entitled "Findings and Declaration of Purpose," sets forth perceived inequitable consequences of the joint liability system, including disproportionately high insurance premiums and liability for total judgments based on a small percentage of actual fault. The section, however, again employs a future tense predicate: "to remedy these inequities, defendants in tort actions *shall be* held financially liable in closer proportion to their degree of fault." The language can be reasonably read to require only a prospective remedy to eliminate presently perceived inequities. The voters may well have reasoned that from election day forward the liability system would be changed: nothing suggests a clear intent to retroactively effect prior transactions.

Apart from the language of the initiative itself, we look to the accompanying ballot arguments and analysis as interpretive aids. (See *In re Lance W., supra,* 37 Cal.3d at p. 888, fn. 8; *Estate of Cirone* (1984) 153 Cal.App.3d 199, 202 [200 Cal.Rptr. 511].) Nothing in these materials suggests a retroactive application; they are either worded in the future tense, as is the Act itself, or are ambiguously worded in the present tense without sufficient indication that the voters understood their passage would impact pending cases based on previously accrued causes of action. Real parties point out a portion of a ballot argument against the initiative which claimed that "every asbestos case would take substantial losses" if the initiative passed. A passing reference in one ballot argument is not sufficient to demonstrate a clear intent to apply the Act to pending litigation. In sum, the language of the ballot materials simply does not support the conclusion that the electorate intended Proposition 51 to apply retroactively.

Finally, we attempt to discern the electorate's intent from the obvious purpose of the initiative measure. ■ If an intent for retroactive application is obvious from the nature of the statutory change, a court may impute such an intent without additional indicia. (See *Andrus* v. *Municipal Court* (1983) 143 Cal.App.3d 1041 [192 Cal.Rptr. 341]; *Mannheim* v. *Superior Court, supra,* 3 Cal.3d 678.)

Real parties draw our attention to the "Findings" made by the voters in the first section of the initiative. The findings recite inequities of joint liability, including the "deep pocket" plaintiff tactic of seeking a total liability judgment against a pecunious defendant only partially at fault. The findings note the imminent financial and insurance crisis of such "deep

pocket" defendants, including municipalities forced to curtail necessary services for lack of funding.

From these findings, real parties make two basic arguments.[5] First, they contend the voters perceived the old law of joint liability as an inequitable system deserving maximum eradication. They analogize this case to those where the Legislature has abolished or mitigated a criminal penalty (*In re Estrada, supra,* 63 Cal.2d 740), or where the Legislature has acted to abolish an inequitable procedural loophole. (*Andrus v. Municipal Court, supra,* 143 Cal.App.3d 1041.) Reliance on *Estrada* is unavailing. The Act did not mitigate a criminal penalty but a system of civil liability; the system may have been determined by the voters to lead to inequities but it was not of the nature of a penalty. *Andrus* is likewise unpersuasive: in that case the Legislature eradicated an antiquated and highly unreasonable provision allowing a direct, pretrial appeal from the municipal court to the Court of Appeal. Eradication of the provision in all cases, including pending ones, was obvious from the very nature of the highly efficient procedural change. The case of Proposition 51 is qualitatively distinct. Although the voters may have perceived an existing inequity in joint and several liability, we cannot say that the issue is as clear as those in *Andrus, Estrada* and the similar cases cited that the eradication of the inequity was intended to apply retroactively.

Second, real parties argue the findings show that the voters intended immediate application to pending cases so as not to put off the benefit of the new system until the "remote" time new causes of action go to trial and judgment. This contention has a certain facial appeal but does not withstand analysis. The prospective-only application of Proposition 51 *would* satisfy an electoral intent for immediate relief of the public entity "deep pocket" insurance crisis, and would not delay the curative effect of the Act until some "remote" future time. The very passage of the Act has mitigated the insurance crisis by allowing a reduction of premiums. Causes of action accruing after the Act's effective date need not be insured against for joint liability for the often considerable amounts of damages for pain and suffering. Causes of action already accrued against "deep pocket" defendants have already been insured against under the law of joint liability, and premiums have already been paid. Retroactive application of the Act to these claims would diminish the liability of defendants without any corresponding reduction of insurance premiums. Such a windfall to insurance companies should not be lightly attributed to the California electorate.

We conclude there is no clear intent of the electorate for the retroactive application of Proposition 51 to causes of action which accrued

---

[5]We pay heed to these findings without deciding whether they are entitled to the same judicial deference as findings resulting from the legislative process.

prior to its effective date of June 4, 1986. Since retroactivity was not clearly intended, we need not reach the question whether retroactive application would abrogate a vested right. (See *In re Marriage of Buol, supra,* 39 Cal.3d 751.)[6]

Let a peremptory writ issue commanding respondent superior court to vacate its order of June 30, 1986, ruling Proposition 51 applicable to Russell v. Fibreboard Corporation et al., Alameda County Superior Court action No. 578947-4, and to enter a new and different order ruling Proposition 51 inapplicable. So as to not frustrate the need for prompt relief, we deem this opinion final forthwith. (Cal. Rules of Court, rule 24(c).)

King, J., and Haning, J., concurred.

The petitions of real parties in interest for review by the Supreme Court were denied October 30, 1986. Reynoso, J., Lucas, J., and Panelli, J., were of the opinion that the petitions should be granted.

---

[6]Real parties argue that Russell does not have a "vested interest" in a particular measure of damages or in joint liability. Abrogation of a vested right by retroactivity, however, is only a question reached *after* a determination of legislative intent. Real parties have confused the *intent* to legislate retroactively with the *power* to do so.