[No. A042499. First Dist., Div. Five. Sept. 29, 1989.]

DEBORAH M. WIENHOLZ, an Incompetent Person, etc., Plaintiff and Appellant, v.
KAISER FOUNDATION HOSPITALS et al., Defendants;
HOBERG, FINGER, BROWN, COX & MOLLIGAN, Claimant and Respondent.

**COUNSEL**

Hawkins, Blick & Fitzpatrick and Stephen L. Blick for Plaintiff and Appellant.

Hoberg, Finger, Brown, Cox & Mulligan, Peter Molligan and Daniel U. Smith for Claimant and Respondent.

## OPINION

KING, J.—Deborah M. Wienholz, an incompetent person, by and through her conservator, Barbara Wienholz, (collectively appellant) appeals from a superior court order granting $434,149 in attorney fees to the law firm that settled her medical malpractice action against Kaiser Foundation Hospitals. Appellant contends the fee award should not have exceeded $288,458, which was the maximum compensation permitted under the contingency fee limitations set out in the 1975 version of section 6146 of the Business and Professions Code[1] which was in effect at the time she entered into a contingency fee agreement for legal representation. The law firm of Hoberg, Finger, Brown, Cox & Molligan (respondent) argues the trial court had discretion to adjust the amount of attorney fees to reflect a 1987 amendment to section 6146 which *increased* the maximum contingency fee in medical malpractice lawsuits resulting in recoveries greater than $200,000. The primary question presented by this appeal is whether the 1987 amendment to section 6146 should set the maximum fee in a case, such as this one, where a contingency fee agreement for legal representation was entered into before the effective date of the 1987 amendment but where the settlement and fee distribution take place after the effective date of the amendment. We conclude that respondent's compensation must be governed by the 1975 version of section 6146 which was in effect at the time the parties entered into their contingency fee agreement for legal representation; accordingly, we reverse the judgment.

Appellant Deborah Wienholz was injured in an automobile accident on June 8, 1986. While under the care of Kaiser Foundation Hospital in Redwood City, California, she fell out of a sixth-floor window resulting in irreversible brain stem damage with a diagnosis of persistent vegetative state. As a result, Barbara Wienholz, Deborah's mother, was appointed conservator of the person and estate of Deborah Wienholz. On July 22,

---

[1] Unless otherwise indicated, all further statutory references are to the Business and Professions Code.

This case involves section 6146, which is but one provision of the Medical Injury Compensation Reform Act of 1975 (MICRA) (Stats. 1975, Second Ex. Sess. 1975-1976, chs. 1, 2, pp. 3949-4007). MICRA was enacted in response to the skyrocketing increase in medical malpractice insurance premiums which threatened the curtailment of available medical care in California. (For a full history of this legislation, see *American Bank & Trust Co. v. Community Hospital* (1984) 36 Cal.3d 359 [204 Cal.Rptr. 671, 683 P.2d 670, 41 A.L.R.4th 233] and *Barme v. Wood* (1984) 37 Cal.3d 174 [207 Cal.Rptr. 816, 689 P.2d 446].) The California Supreme Court has upheld section 6146's statutory limit on contingency fee agreements against constitutional challenge. (See *Roa v. Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920 [211 Cal.Rptr. 77, 695 P.2d 164].) It has also been held that a client may not waive the limitation on attorney fees set out in section 6146. (*Fineberg v. Harney & Moore* (1989) 207 Cal.App.3d 1049 [255 Cal.Rptr. 299]; *Hathaway v. Baldwin Park Community Hospital* (1986) 186 Cal.App.3d 1247 [231 Cal.Rptr. 334].)

1986, Barbara Wienholz, on behalf of her daughter, entered into an attorney-client relationship with respondent. An attorney-client contingency fee agreement was signed with regard to the medical malpractice claim against Kaiser Hospitals. The contingency fee agreement entered into by the parties set out the following fee structure: The "fee shall be 40% of the first $50,000 so recovered or to be recovered, 33 1/3% of the next $50,000 recovered or to be recovered, 25% of the next $100,000 recovered or to be recovered and 10% of any amount on which the recovery exceeds $200,000." This contract provision reflected the maximum contingency fee an attorney could collect in a medical malpractice action under the version of section 6146 then in effect.

The Willie L. Brown Jr.-Bill Lockyer Civil Liability Reform Act of 1987 (Stats 1987, ch. 1498, Sen. Bill No. 241) was enacted on September 30, 1987. This legislation embodied a comprehensive tort reform package which focused on four major topics: punitive damages, an insurer's obligation to hire independent counsel; immunity for inherently dangerous products and modifications to MICRA. (For a full history of this legislation, see *American Tobacco Co.* v. *Superior Court* (1989) 208 Cal.App.3d 480, 486-488 [255 Cal.Rptr. 280].) Section 2 of the bill responded to complaints that the fee structure of the 1975 version of section 6146 did not adequately reflect the costs and effort associated with prosecuting larger medical malpractice cases. Therefore, the fee schedule was modified to allow fees of 25 percent of any recovery between $200,000 and $600,000 and 15 percent of any recovery in excess of $600,000 (all up from the straight 10 percent allowed on recoveries over $200,000 in the original version of section 6146). The 1987 amendment to section 6146 took effect on January 1, 1988.

Trial commenced on January 4, 1988, resulting in a jury verdict against Kaiser Hospitals in the sum of $5.7 million. A settlement with Kaiser Hospitals was later reached with present value of cash and annuities totalling $2,467,910.22. The court found the settlement reasonable and approved it. At the same time, respondent requested the court approve payment of attorney fees from the net proceeds of the settlement under the schedule of contingency fees set forth in the 1987 amendment to section 6146. Appellant questioned the applicability of the 1987 amendment to this case, arguing that the attorney fees should not exceed the statutory limits established by the 1975 version of section 6146 which were adopted by the parties in their contingency fee agreement. The difference between using the old and new fee schedule resulted in a fee dispute of approximately $150,000. The superior court reasoned that "consider[ing] the work that was done in this case . . . it is fair, simply looking at the amounts involved, to apply the '88 standard." This appeal followed.

" 'A retrospective law is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute.' " (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 391 [182 P.2d 159].) In this case, the parties entered into a contingency fee arrangement on July 22, 1986, when the 1975 version of section 6146 set the limit on contingency fees recoverable in medical malpractice actions. Therefore the application of the amendment subsequently made to section 6146 to determine the amount of compensation would clearly be retrospective.

"[I]t is presumed an amendment to a statute operates prospectively unless the Legislature has expressly stated the contrary or, after considering all pertinent factors, there is clear indication of a legislative intent that the statute operate retrospectively. [Citation.] In determining this issue, it is appropriate to consider whether the purpose of the amendment would be served significantly by its application to transactions which preceded the change and the principle that retrospective imposition of increased liabilities is to be carefully avoided. [Citation.]" (*City of Los Angeles* v. *Shpegel-Dimsey, Inc.* (1988) 198 Cal.App.3d 1009, 1019-1020, fn. 2 [244 Cal.Rptr. 507]; see also *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1208-1209 [246 Cal.Rptr. 629, 753 P.2d 585].)

The central inquiry is whether the Legislature intended the amendment to operate retroactively. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371].) We first note there is nothing in the language of the 1987 amendment to section 6146 indicating a legislative intent that it apply retrospectively. This factor is always considered significant because "[t]he Legislature is well acquainted with the rule requiring a clear expression of retroactive intent [citation], and the fact that it did not so express itself or did not make the amendment effective immediately is a significant indication it did not intend to apply the amendment retroactively." (*Perry* v. *Heavenly Valley* (1985) 163 Cal.App.3d 495, 500 [209 Cal.Rptr. 771].)

In the instant case, the absence of express language providing for retroactivity takes on special significance because two of the six operative sections of the measure that produced the 1987 amendment to section 6146 contain *express* references to retroactive application. The legislative package known as the Willie L. Brown Jr.- Bill Lockyer Civil Liability Reform Act of 1987 resulted in an amendment to the Business and Professions Code (with which we are concerned), the addition of two new sections and two amendments to the Civil Code, and the addition of a new section to the Code of Civil Procedure. Of these six provisions only the two amendments to the Civil Code were *expressly* made retroactive. (See Stats. 1987, ch. 1498, Sen.

Bill No. 241.) ■ "It is a well recognized principle of statutory construction that when the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded." (*Ford Motor Co.* v. *County of Tulare* (1983) 145 Cal.App.3d 688, 691 [193 Cal.Rptr. 511]; *People* v. *Aston* (1985) 39 Cal.3d 481, 491, fn. 9 [216 Cal.Rptr. 771, 703 P.2d 111].) ■ The fact that the Legislature *specifically conferred retroactive application* on certain provisions while omitting any reference to retroactivity on other provisions, strongly implies a different intention existed.

Respondent attempts to downgrade the significance of the Legislature providing for retroactivity in some sections of the Willie L. Brown Jr.- Bill Lockyer Civil Liability Reform Act of 1987 but not in others. Respondent points out the two sections expressly made retroactive were both found in the Civil Code, which contains a provision that "No part of [the Civil Code] is retroactive, unless expressly so declared." (Civ. Code, § 3.) Respondent argues that the Legislature was forced to clearly state its intention with respect to retroactivity where the Civil Code was concerned to rebut the presumption contained in section 3 but was under no similar compulsion to clarify its intention with respect to provisions to be added to the other codes. The language contained in section 3 of the Civil Code has been definitively construed to do "no more than codify a general rule of construction applicable as well to statutes containing no such provision." (*Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control* (1966) 65 Cal.2d 349, 371 [55 Cal.Rptr. 23, 420 P.2d 735]; see also *Evangelatos* v. *Superior Court, supra,* 44 Cal.3d at pp. 1207-1208, fn. 11; *In re Marriage of Bouquet, supra,* 16 Cal.3d at p. 587, fn. 3.) Because our Supreme Court has long made it clear that the language contained in the Civil Code should not be interpreted to create presumptions or rules for the Civil Code which are distinct from ordinary statutory retroactivity principles, respondent's claim must fail. In summary, we believe the absence of any express provision directing retroactive application of the amendment to section 6146, while expressly declaring other provisions retroactive, strongly supports the Legislature's intent that the amendment apply prospectively.

We are also guided by the history of this legislation. It appears the retroactivity question was actually consciously considered during the original enactment of section 6146. Prior to the passage of the legislation, the Legislative Counsel rendered an opinion that the monetary limits on contingency fee contracts would apply only to *contracts entered into after the effective date of the legislation.* The opinion noted "[T]he obligation of a contract would be impaired if the statute were applicable to contracts entered into prior to the effective date of [section 6146]. However, a statutory construction that would impair existing obligations is not favored, and

statutory provisions will not be applied retroactively so as to impair existing obligations unless the intention of the Legislature demands it. [Citations.]" The limitations set out in section 6146 would "only be related to those contracts entered into after the effective date of [section 6146] in order to avoid the impairment of existing obligations." (Ops. Cal. Legis. Counsel, No. 19849 (Sept. 12, 1975) Malpractice, 13 Assem. J. (1975-1976 Second Ex. Sess.) pp. 374-379.) In light of the legislative history noted above, we assume that had the Legislature disagreed with the Legislative Counsel's opinion or had it intended the new 1987 amendment receive a different interpretation, it would have added an explicit reference to the amendment's retroactive application. (See *Bolen* v. *Woo* (1979) 96 Cal.App.3d 944, 958-959 [158 Cal.Rptr. 454]; see also *Robinson* v. *Pediatric Affiliates Medical Group, Inc.* (1979) 98 Cal.App.3d 907, 911-912 [159 Cal.Rptr. 791].) Instead, the Legislature reenacted the previously construed language verbatim, simply adjusting the schedule of allowable contingency fees upward. This action represents a legislative endorsement of the opinion of the Legislative Counsel construing the statute to operate prospectively.

Respondent takes from *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917 [154 Cal.Rptr. 503, 593 P.2d 200], and related cases the flat rule that current fee statutes are always applied to pending cases. (See, e.g., *Bradley* v. *Richmond School Board* (1974) 416 U.S. 696 [40 L.Ed.2d 476, 94 S.Ct. 2006]; *Rumford* v. *City of Berkeley* (1982) 31 Cal.3d 545, 559 [183 Cal.Rptr. 73, 645 P.2d 124]; *Estate of Johnston* (1956) 47 Cal.2d 265 [303 P.2d 1]; *Citizens Against Rent Control* v. *City of Berkeley* (1986) 181 Cal.App.3d 213 [226 Cal.Rptr. 265]; *Wood* v. *McGovern* (1985) 167 Cal.App.3d 772 [213 Cal.Rptr. 498]; *Bank of Idaho* v. *Pine Avenue Associates* (1982) 137 Cal.App.3d 5 [186 Cal.Rptr. 695]; *Kievlan* v. *Dahlberg Electronics Inc.* (1978) 78 Cal.App.3d 951 [144 Cal.Rptr. 585].) This broad reading ignores the critical fact that all of these cases dealt with *newly enacted* attorney fees statutes or fees set by statute and there was no possible contractual impairment resulting from the application of the statute to matters pending.

Respondent also suggests (for the first time on appeal) that because the contingency fee contract was never approved by the court prior to concluding the case, that the terms of the contract were subject to judicial modification and not binding on the parties. Therefore, respondent argues, the application of the 1987 amendment cannot be shown to impair the obligation of contract, and the trial court had discretion to adjust the fees to reflect the new fee schedule. (See Prob. Code, § 2644, subd. (a).) Assuming arguendo that respondent's argument is preserved for our review, it is unpersuasive. As has been previously discussed, the maximum contingency fee to which respondent is entitled is set by the version of section 6146 *in*

*effect on the date the contract was entered into.* The trial court had no discretion to order fees in excess of those statutory limits even if the contract's terms were subject to modification.

In reaching our decision we wish to state that our review of the record convinces us that the legal services respondent provided in this matter easily justify the fee awarded by the trial court. Indeed, if it were not for the statute, reasonable fees in an even larger amount would be justifiable. However, we, as well as respondent, are bound to follow the Legislature's enactment.

The judgment is reversed. Each party shall bear its own costs on appeal.

Low, P. J., and Haning, J., concurred.