[No. B135120. Second Dist., Div. Two. Aug. 9, 2000.]

SAN GABRIEL VALLEY WATER COMPANY, Plaintiff and Appellant,
v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY et al.,
Defendants and Respondents.

COUNSEL

Proskauer Rose, David S. Scheidemantle, Barry C. Groveman, Aaron P. Allan, Ronnie Beth Nadell; and Timothy J. Ryan for Plaintiff and Appellant.

Musick, Peeler & Garrett and Susan J. Field for Defendant and Respondent Industrial Indemnity Company.

LeBoeuf, Lamb, Greene & MacRae, Vincent J. Davitt and Mark Estrella for Defendant and Respondent Travelers Property Casualty Corp.

Smith, Deverich, Ellison & Harraka, Phillip E. Smith and Caroline McIntyre for Defendants and Respondents Hartford Accident and Indemnity Company, Hartford Casualty Insurance Company and Twin City Fire Insurance Company.

Lillick & Charles, Stephen G. Schrey and Alan S. Feiler for Defendant and Respondent Allstate Insurance Company.

Berman & Aiwasian and Alan S. Berman for Defendant and Respondent Century Indemnity Company.

OPINION

**COOPER, J.**—Civil Code section 2860, subdivision (c) provides in part that in cases of conflict of interest requiring an insurer to provide independent counsel to defend an insured, "The insurer's obligation to pay fees to the independent counsel selected by the insured is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended."[1] This case presents two questions regarding the application of section 2860(c). First, does the statute properly apply to actions commenced after its enactment where the underlying insurance policy preexisted that enactment? Second, in cases in which more than one insurer has reserved rights and is obligated to provide for independent counsel, does the statute provide for a single rate limit applicable to those insurers collectively, as opposed to requiring them each potentially to pay up to its own ordinary rate? We agree with the trial court that the answer to both questions is affirmative, and we therefore affirm the declaratory

---

[1] Undesignated section references hereafter are to the Civil Code. Section 2860, subdivision (c) is cited as section 2860(c).

judgment granted in favor of defendants, liability insurers of plaintiff San Gabriel Valley Water Company.

FACTS

Plaintiff brought this action for declaratory relief against a group of insurers (defendants) with which plaintiff had liability insurance policies that potentially covered two damages lawsuits, filed in 1997 and 1998, which charged plaintiff with furnishing contaminated drinking water over a period of years.[2] As reflected in the stipulated facts on which the case was tried, some of these policies predated January 1, 1988, the date section 2860 became effective. None of them contained provisions regarding attorney fees or disputes concerning such fees that would render section 2860(c) inapplicable. Defendants each agreed to provide a defense of the actions subject to reservations of rights affecting indemnity coverage, and each agreed that plaintiff was therefore entitled, pursuant to section 2860, to retain independent counsel for that defense.[3]

Plaintiff chose as independent counsel the law firm of Proskauer Rose LLP (Proskauer). Proskauer has billed plaintiff hourly rates of between $245 and $310 for certain named senior attorneys, $125 to $235 for junior associates, and $40 to $110 for clerks and paralegals. In contrast, according to the complaint, the various defendants advised plaintiff that the hourly rates they ordinarily paid for defense of similar actions in the community ranged from $125 to $186 for partners, $110 to $146 for associates, and $65 to $75 for paralegals. Defendants jointly offered to pay $170 per hour for partners, $140 for associates, and $65 for paralegals.

Plaintiff's original complaint sought a declaration that section 2860(c)'s limitation of fee rates applied to the defendants individually, not collectively, and therefore that defendants collectively could be required under the statute to pay a rate in excess of their individual rates, provided it was reasonable. Defendants disputed this position. By amended complaint, plaintiff sought a further declaration that section 2860(c) did not apply to the

---

[2]The complaint named Industrial Indemnity Insurance Company (which answered as Industrial Indemnity Company), Travelers Property Casualty Insurance Company, Allstate Insurance Company, Century Indemnity Company (as successor to Insurance Company of North America), and The Hartford Insurance Company. In response to the erroneous naming of the latter, separate answers were filed by Hartford Accident and Indemnity Company, Hartford Casualty Insurance Company, and Twin City Fire Insurance Company.

[3]Defendant Century Indemnity Company subsequently amended its reservation of rights and took the position that there no longer existed a conflict of interest requiring independent counsel. Plaintiff disputes this position. That dispute is not at issue here.

payment of independent counsel fees "pursuant to" those of defendants' policies that had been issued before January 1, 1988.[4]

After consideration of the stipulated facts, and the parties' trial briefs and oral arguments, the trial court determined both issues in favor of defendants. The court thereupon issued a declaratory judgment to the effect that (1) section 2860(c) applies to the fees of independent counsel in the underlying tort cases regardless of whether the policies under which defense is being provided were issued before or after 1988; and (2) section 2860(c) limits the billing rates to be paid by defendants collectively to rates—to be determined by arbitration if agreement cannot be reached—actually paid by any one of the defendants in the defense of similar actions in the community.

## DISCUSSION

### 1. Section 2860(c) in Context.

Section 2860 represents an effort to refine certain aspects of an insurer's duty to provide independent counsel to defend its insured. *Executive Aviation, Inc. v. National Ins. Underwriters* (1971) 16 Cal.App.3d 799 [94 Cal.Rptr. 347] first held that when the interests of insurer and insured conflict, "the insurer's obligation to defend its insured extends to paying the reasonable value of the legal services and costs performed by independent counsel, selected by the insured [citation]." (*Id.* at p. 810.)

Thereafter, *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 [208 Cal.Rptr. 494, 50 A.L.R.4th 913] (*Cumis*) considered the situation of an insurer's reservation of rights to deny coverage upon resolution of liability litigation, and the conflict of interest such a reservation of rights posed not only for the insurer but also for defense counsel selected by it. The court concluded: "[T]he Canons of Ethics impose upon lawyers hired by the insurer an obligation to explain to the insured and the insurer the full implications of joint representation in situations where the insurer has reserved its rights to deny coverage. If the insured does not give an informed consent to continued representation, counsel must cease to represent both. Moreover, in the absence of such consent, where there are divergent interests of the insured and the insurer brought about by the

---

[4]Section 2860(c) also provides that any attorney fee dispute not resolved by the methods specified therein shall be resolved by binding arbitration. Plaintiff originally sought to enjoin such arbitration pending resolution of the legal disputes tendered by its declaratory relief claims. That cause of action became moot after this court declined to stay the declaratory relief trial pending arbitration. All parties anticipate that arbitration of the allowable rates will follow determination of this appeal.

insurer's reservation of rights based on possible noncoverage under the insurance policy, the insurer must pay the reasonable cost for hiring independent counsel by the insured. . . ." (*Id.* at p. 375.)

Section 2860 " 'clarifies and limits' " the rights and responsibilities set forth in *Cumis, supra,* 162 Cal.App.3d 358. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 59-60 [65 Cal.Rptr.2d 366, 939 P.2d 766] (*Buss*); 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1139, p. 560.) The section reiterates the duty to provide independent counsel in certain circumstances of conflict of interest (subd. (a)), describes situations in which such a conflict may exist and on the other hand where one does not exist (subd. (b)), provides for disclosures by independent counsel to the insurer (subd. (d)), sets forth a recital by which the insured may waive its right to select independent counsel (subd. (e)), and provides for cooperation between insured-selected and insurer-selected counsel (subd. (f)).[5]

Finally, section 2680(c) allows the insurer to require that independent counsel chosen by the insured possess certain minimum qualifications,

---

[5]These subdivisions of section 2860 provide as follows: "(a) If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured unless, at the time the insured is informed that a possible conflict may arise or does exist, the insured expressly waives, in writing, the right to independent counsel. An insurance contract may contain a provision which sets forth the method of selecting that counsel consistent with this section. [¶] (b) For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist. No conflict of interest shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance policy limits. [¶] . . . [¶] (d) When independent counsel has been selected by the insured, it shall be the duty of that counsel and the insured to disclose to the insurer all information concerning the action except privileged materials relevant to coverage disputes, and timely to inform and consult with the insurer on all matters relating to the action. Any claim of privilege asserted is subject to in camera review in the appropriate law and motion department of the superior court. Any information disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party. [¶] (e) The insured may waive its right to select independent counsel by signing the following statement: 'I have been advised and informed of my right to select independent counsel to represent me in this lawsuit. I have considered this matter fully and freely waive my right to select independent counsel at this time. I authorize my insurer to select a defense attorney to represent me in this lawsuit.' [¶] (f) Where the insured selects independent counsel pursuant to the provisions of this section, both the counsel provided by the insurer and independent counsel selected by the insured shall be allowed to participate in all aspects of the litigation. Counsel shall cooperate fully in the exchange of information that is consistent with each counsel's ethical and legal obligation to the insured. Nothing in this section shall relieve the insured of his or her duty to cooperate with the insurer under the terms of the insurance contract."

including errors and omissions coverage and certain defense litigation experience. The statute then contains the provision at issue in this case, namely that the insurer's obligation to pay fees to independent counsel selected by the insured is limited to the rates the insurer actually pays to attorneys it retains in the ordinary course of business in the defense of similar actions in the community. Section 2860(c) concludes by providing it does not invalidate other or further policy provisions regarding attorney fees or methods to settle disputes about them, but that any dispute not resolved "by these methods" shall be resolved by final and binding arbitration by a single neutral arbitrator.[6]

### 2. "Retroactivity."

We consider first plaintiff's contention that section 2860(c)'s fee rates limitation cannot be applied insofar as defendants are defending plaintiff pursuant to policies entered into before the statute's 1988 effective enactment, because such an application would be impermissibly retroactive. In so contending, plaintiff initially notes that section 3 provides that no part of the Civil Code is retroactive, unless expressly so declared, and that section 2860(c) contains no such declaration, whereas the legislation that enacted it expressly made other simultaneously enacted statutory provisions retroactively effective. (See *Wienholz v. Kaiser Foundation Hospitals* (1989) 217 Cal.App.3d 1501, 1505-1506 [267 Cal.Rptr. 1] (*Wienholz*). Plaintiff further observes that *Wienholz* declined to apply retroactively another attorney fee limitation enacted by the same legislation, and indeed that section 2860(c) itself was determined nonretroactive in *Center Foundation v. Chicago Ins. Co.* (1991) 227 Cal.App.3d 547, 557-558 [278 Cal.Rptr. 13] (*Center*).

Notwithstanding the foregoing, plaintiff's nonretroactivity contention suffers from a fundamental flaw: application of section 2860(c) to defendants'

---

[6]Section 2860(c) provides in full as follows: "(c) When the insured has selected independent counsel to represent him or her, the insurer may exercise its right to require that the counsel selected by the insured possess certain minimum qualifications which may include that the selected counsel have (1) at least five years of civil litigation practice which includes substantial defense experience in the subject at issue in the litigation, and (2) errors and omissions coverage. The insurer's obligation to pay fees to the independent counsel selected by the insured is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended. This subdivision does not invalidate other different or additional policy provisions pertaining to attorney's fees or providing for methods of settlement of disputes concerning those fees. Any dispute concerning attorney's fees not resolved by these methods shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute."

payment of independent counsel fees for Proskauer will not involve retroactivity or retroactive application of the statute. "A statute is retroactive if it substantially changes the legal effect of past events." (*Kizer v. Hanna* (1989) 48 Cal.3d 1, 7 [255 Cal.Rptr. 412, 767 P.2d 679] (*Kizer*); cf. *Wienholz, supra,* 217 Cal.App.3d at p. 1505 [" ' "A retrospective law is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute." ' "].) Section 2860(c) does not so impinge or operate here. The statute limits the fee rates defendants must pay to independent counsel chosen by plaintiff because of conflicts of interests with respect to the underlying liability lawsuits. Those suits, defendants' reservations of rights creating conflicts of interests, and the consequent entitlement of plaintiffs to employ independent counsel and to have their fees paid by defendants, all arose after the enactment of section 2860(c). The statute's delimitation of rates for those fees thus operates with respect to postenactment facts, events, and circumstances, not retroactively. (Cf. *Kizer, supra,* 44 Cal.3d at pp. 7-8.)

*Center, supra,* 227 Cal.App.3d 547, presented a different situation. There an insurer sought to avoid liability for the fees of independent counsel that certain insureds had engaged in 1981—years before section 2860(c)—to defend litigation also commenced in 1981, and with respect to which a reservation of rights had then been asserted. Contesting the trial court's holding that the insured had absolute discretion to select its independent counsel without any interference, the insurer sought to rely upon section 2860(c)'s provision of the right to require minimum qualifications of counsel. (*Center,* at pp. 555, 557.) The Court of Appeal ruled that section 2860(c) could not thus be "applie[d] retroactively to this 1981 dispute . . . ." (*Center,* at p. 557.)[7]

*Wienholz, supra,* 217 Cal.App.3d 1501, is also distinguishable. That case involved a medical malpractice contingency fee agreement, governed by the fee limits of Business and Professions Code section 6146, that had been entered into in 1986. The legislation that enacted section 2860(c) also enlarged those limits. Thereafter, following a verdict for the malpractice plaintiff, the trial court held the new, higher limits applicable to the fees allowable to her attorney. After determining that the amended version of Business and Professions Code section 6146 was not intended to be retroactive, the appellate court reversed. It stated that "the statutory limits established by the 1975 version of section 6146 . . . were adopted by the parties

---

[7]*Center, supra,* 227 Cal.App.3d 547, thus also intimates that the critical time factor in considering whether section 2860(c) is being advanced for retroactive application is not the date of the insurance policy but rather the timing of independent counsel's appointment and entitlement to compensation.

in their contingency fee agreement" (*Wienholz*, at p. 1504), and that to apply the new limits would, or at least could, impair the obligations of that contract. (See *id.* at pp. 1506-1507.)

No such prospect appears in the present case with respect to section 2860(c)'s application to fees paid by defendants that are defending plaintiff under pre-1988 policies. Although the underlying duty to defend derives from those policies, there is no evidence that they address or control the fee rates to be paid for such defense, particularly to independent counsel chosen by the insured. Indeed, the stipulated facts of this case include that "there are no provisions in any of the Insurance Policies pertaining to attorney's fees or providing for methods of settlement of disputes concerning those fees that would render Section 2860(c) inapplicable to any [defendant's] obligation to pay independent counsel fees."

Plaintiff urges that section 2860(c) changes the limit of the rates an insurer is obligated to pay independent counsel, from the upper limit of the "reasonable fees" referred to in *Cumis supra,* 162 Cal.App.3d at page 375, to the specific limitation to rates actually charged by the insurer in the ordinary course of business. That it does. But this does not make the application of the statute to defendants with pre-1988 policies impermissibly retroactive. As explained above, the new limitation will operate here only with respect to postenactment hiring, compensation, and other invoking circumstances, and it will not alter the terms or effect of the policies themselves. "A statute does not operate retroactively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment." (*Kizer, supra,* 48 Cal.3d at p. 7.)[8]

*United States Fidelity & Guaranty Co. v. Superior Court* (1988) 204 Cal.App.3d 1513 [252 Cal.Rptr. 320] (*USF&G*) also confirms that the presence of pre-1988 policies does not itself preclude application of section 2860(c) as retroactive. That case involved pre-1988 policies and liability litigation, and presented a dispute about the insured's entitlement to select independent counsel. After deciding that issue in favor of the insured, the court addressed questions it had posed the parties regarding an insurer's remedies when concerned about the competence of independent counsel's representation or wishing to obtain nonprivileged information from counsel. The court declared that the then recently effective "Civil Code section 2860

---

[8]Plaintiff more than once avers that the pre-1988 policies and their premiums were respectively made and paid in view of the range of independent counsel compensation available under *Cumis, supra,* 162 Cal.App.3d 358. There is no evidence to this effect. The trial stipulations do not reflect when the policies were entered into. For all we know, they may have predated *Cumis*.

now applies to this case" (*USF&G,* at p. 1526), and discussed section 2860, subdivisions (d) and (f), and section 2860(c)'s provision for arbitration, as "now available to the parties." (*USF&G,* at p. 1527.)

*Diamond Walnut Growers, Inc. v. American Motorists Ins. Co.* (N.D.Cal. May 10, 1991, No. C 90-1691 VRW) 1991 U.S.Dist. Lexis 7317 (*Diamond*) does not propound a different conclusion. In *Diamond,* an insurer that had reserved rights agreed in 1986 to pay roughly the normal rates of the insured's independent counsel. Then in 1988, shortly after the enactment of section 2860(c), the insurer declined to pay more than a lesser rate, apparently the rate it paid attorneys defending similar actions. The insured sued for breach of contract, and obtained summary judgment that section 2860(c) did not govern. This result paralleled that in *Wienholz, supra,* 217 Cal.App.3d 1501, upon which the court relied, because the insurer was seeking to apply section 2860(c) retroactively to a prior fee agreement. But despite certain statements in the opinion that section 2860(c) did not retroactively apply to pre-1988 insurance policies (*Diamond, supra,* at pp. *10, *21), that point was neither presented and nor actually decided. (See *id.* at pp. *3, *5, fn. 2, *6-*7.)

We conclude that section 2860(c) properly applies, in a nonretroactive fashion, to the fees payable to independent counsel by the defendants that are providing for plaintiff's defense pursuant to policies issued before 1988.

3. *Section 2860(c)'s Rate Limitation as Applicable to Multiple Insurers.*

The other controversy before the trial court and now this court is whether in a case like this, in which multiple insurers have interposed reservations of rights and are obligated to provide independent counsel for the insured, section 2860(c)'s limitation of the fee rates payable to counsel chosen by the insured operates collectively with respect to all insurers, or on the other hand applies separately to each insurer. We agree with the trial court's determination that the statute imposes a "cap" on fee rates payable that applies to all defendants collectively.

In opposition to this conclusion, plaintiff first notes that the language of section 2860(c)'s limitation refers to one insurer, not several—"The *insurer's* obligation to pay fees to the independent counsel selected by the insured is limited to the rates which are actually paid by the *insurer* to attorneys retained by *it* in the ordinary course of business in the defense of similar actions . . . ." (Italics added.) Plaintiff contends that this language is plain and unambiguous in its meaning and significance: the limitation applies distinctly to each individual insurer. But the matter is not that simple.

In the first place, section 14 provides that with respect to words used in the Civil Code, "the singular number includes the plural . . . ." In *Shell Oil Co. v. Superior Court* (1935) 5 Cal.App.2d 480 [42 P.2d 1049], the court applied this directive, in a multiple-defendant action, to a statute requiring a $500 undertaking in favor of a defamation suit "defendant." The court held "that the statute requires no other or greater bond than the amount specified even though several defendants may have been joined in the action." (*Id.* at p. 483.) By the same statutory compulsion, section 2860(c)'s reference to an insurer would also apply to more than one; it would not signify or mandate the allowance of a higher rate than prescribed for a single insurer.

A second significant factor militating against plaintiff's view of section 2860(c)'s limit is that it would create arbitrary results that would run contrary to the purpose of the limitation. That purpose, plainly, is to provide insurers restricted and relatively consistent and predictable fee rates payable to insured-selected independent counsel. But under plaintiff's approach, the allowable rates would be susceptible to variation and dramatic expansion, depending on how many insurers were called upon to defend. Contrary to plaintiff's suggestion, such a profusion of separate rate "caps" is not a logical consequence of the fact that each insurer's participation arises from a separate reservation of rights and a separate application of section 2860, subdivision (a).

Plaintiff contends, however, that its theory of multiple rate limits may operate consistently with section 2860(c)'s purpose and intendment because each defendant would theoretically be exposed to payment of the full rates it ordinarily pays for an insured's defense, but the rates ultimately allowable would be governed by the "reasonable[ness]" standard of *Cumis, supra,* 162 Cal.App.3d at page 375. This proposition begs the question and is unacceptable. *Cumis* simply no longer governs the maximum fee rates insurers must pay to insurer-selected independent counsel. Section 2860(c) does. The statute may not be displaced in a multi-insurer context by application of its predecessor limit.

Plaintiff also attempts to support its position by reference to the principle that where several insurers owe duties to defend, their responsibilities are independent, so that each is fully responsible to provide the defense, without regard to the participation or nonparticipation of the others. (See *Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 70, 71, 72-73 [70 Cal.Rptr.2d 118, 948 P.2d 909]; *County of San Bernardino v. Pacific Indemnity Co.* (1997) 56 Cal.App.4th 666, 689-690 [65 Cal.Rptr.2d 657]; *CNA Casualty of California v. Seaboard Surety Co.* (1986) 176

Cal.App.3d 598, 619 [222 Cal.Rptr. 276] (*CNA*).) Accordingly, plaintiff reasons, it would be wrong to view section 2860(c) as providing a collective limit on fee rates; instead, the statute should be construed to require each insurer to pay up to its actual, normal rate. But it is also the rule that an insured is entitled to only a single full defense (see *Horace Mann Ins. Co. v. Barbara B.* (1998) 61 Cal.App.4th 158, 164 [71 Cal.Rptr.2d 350]), and an insurer that has borne the responsibility and cost of that defense is itself entitled to a sharing or contribution by the other responsible insurers. (E.g., *Continental Cas. Co. v. Zurich Ins. Co.* (1961) 57 Cal.2d 27, 37 [17 Cal.Rptr. 12, 366 P.2d 455]; *Fireman's Fund Ins Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1289, 1295 [77 Cal.Rptr.2d 296]; *CNA, supra,* 176 Cal.App.3d at p. 620.) We believe these principles provide the more compelling analogy and guidance in applying section 2860(c): it provides a single rate limitation, for a single counsel and defense, albeit multiple insurers may be required to contribute to its payment.

Contrary to plaintiff's argument, this construction does not provide multiple insurers a "windfall" by allowing them to contribute only fractionally to the section 2860(c) rate. Contribution is the rule when there are multiple insurers. The further rule codified by section 2860(c) is that the rates to be paid to the insured's chosen independent counsel are limited to those ordinarily paid by an insurer, or insurers. Plaintiff's construction is the one that would create a windfall, at least potentially, for independent counsel, by multiplying that limitation based on the number of insurers that are called upon to defend.

Plaintiff also contends that its interpretation of section 2860(c) would render its application more predictable, because each participating insurer's normal rate could be identified, in contrast to the collective rate that would result if the several insurers' normal rates were different. But we see no greater assurance of certainty under either approach, and certainly not under plaintiff's. In either event there will exist the possibility of disagreement about the appropriateness of the fee rate submitted by the independent counsel, and that question will then have to be resolved by arbitration. The prospect of such disagreement and necessity for arbitration would appear more likely if independent counsel were permitted to propose a rate capped only by the aggregate of multiple insurers' normal rates. On the other hand, under defendants' espoused application of section 2860(c), the same arbitration could resolve any otherwise unresolved discrepancy among the several insurers' normal rates, so as to set the collective rate limitation.

Nor do we perceive any merit in plaintiff's argument that section 2860(c) should be construed against defendants because they had the opportunity, by

the statute's terms, to avoid or modify its effect through policy provisions, and were similarly capable of addressing fee limitations. Most of the policies in this case were written before section 2860(c) was enacted and rendered susceptible to avoidance, and for those that came later, we see no reason why defendants' failure to include provisions about a subject that may have appeared satisfactorily resolved by the statute should count against them in construing it.

Ultimately, the defect in plaintiff's position is as follows. Section 2860(c) was and is clearly intended to impose a limitation on the fee rates insurers must pay to independent counsel chosen by their insureds. Plaintiff, however, would have that limitation expanded and multiplied, depending fortuitously on the number of insurers that are called upon to defend an insured and respond with reservations of rights creating conflicts of interest and a right to independent counsel. Plaintiff's repeatedly suggested basis for that expansion, moreover, is the erroneous proposition that the insured is entitled to payment of the full fee rates and charges of its independent counsel, so long as "reasonable." That, however, ignores what section 2860(c) says, and must mean. The trial court properly rejected plaintiff's attempt to alter the significance of section 2860(c), and correctly declared that the statute imposes a single rate limitation, collectively applicable to all defendants in this case.

## DISPOSITION

The judgment is affirmed.

Boren, P. J., and Nott, J., concurred.